CASE NO. 14-1104

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

**REGIONAL HOUSING ALLIANCE OF LA PLATA COUNTY AND JENNIFER LOPEZ,**

Defendants/Appellants,

v.

**KENNETH JASON RAGSDELL**,

Plaintiff/Appellee.

---

## OPENING BRIEF ON APPEAL

---

Appeal from the United States District Court for the District of Colorado
The Honorable Judge John L. Kane
Civil Action No. 12-CV-00967-JLK

---

J. Andrew Nathan, Reg. No. 3295
Timothy R. Fiene, Reg. No. 41508
Nathan, Bremer, Dumm & Myers, P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237
Tel: (303) 691-3737
*Attorneys for Appellants*

ORAL ARGUMENT IS REQUESTED

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**REGIONAL HOUSING ALLIANCE
OF LA PLATA COUNTY** and
**JENNIFER LOPEZ,**

    Defendants-Appellants,

v.

**KENNETH JASON RAGSDELL**,

    Plaintiff-Appellee.

Case No.: 14-1104

---

On Appeal from United States District Court
for the District of Colorado

The Honorable Judge John L. Kane

Civil Action No. 12-CV-00967-JLK

---

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES ................................................ viii

I.      JURISDICTIONAL STATEMENT ...............................................1

        A.      District Court Subject Matter Jurisdiction.............................1

        B.      Basis for Jurisdiction of the 10th Circuit Court of Appeals .................1

        C.      Timeliness of Appeal ......................................................5

II.     ISSUES PRESENTED FOR REVIEW ........................................6

        A.      Primary Issue .......................................................6

        B.      Secondary Issue ......................................................6

III.    STATEMENT OF THE CASE...................................................6

IV.     STATEMENT OF THE FACTS ................................................8

V.      SUMMARY OF THE ARGUMENT ........................................18

VI.     ARGUMENT......................................................................19

        A.      Ms. Lopez is entitled to qualified immunity as a matter of law .........19

                (1)     Standard of Review................................................19

                (2)     Mr. Ragsdell failed to demonstrate that Ms. Lopez's alleged
                        actions resulted in violation of Mr. Ragsdell's constitutional
                        rights. ....................................................21

                (3)     Mr. Ragsdell failed to demonstrate that the law was sufficiently
                        clear that Ms. Lopez would know that her actions could form
                        the basis of an equal protection claim......................25

a.   Case law does not exist in the 10th Circuit which would render Ms. Lopez liable under an equal protection claim ....................................................................................... 27

b.   The ADA does not apply to the RHA, so it could not form a legal basis for Ms. Lopez's alleged liability ......29

c.   The CADA does not put Ms. Lopez on notice .............30

B.   Inextricably Intertwined ......................................................31

(1)   Standard of Review.................................................31

(2)   Resolution of qualified immunity in favor of Ms. Lopez necessarily resolves all remaining claims ...............31

VI.   CONCLUSION.................................................................33

STATEMENT AS TO ORAL ARGUMENT............................................34

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................35

CERTIFICATE OF DIGITAL SUBMISSION .......................................36

CERTIFICATE OF SERVICE .................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

*Albright v. Rodriguez*,
    51 F.3d 1531, 1535 (10th Cir. 1995) ............................................................20

*Alsbrook v. City of Maumelle*,
    184 F.3d 999, 1011 (8th Cir.1999) ................................................................28

*Barren v. Harrington*,
    152 F.3d 1193, 1194-95 (9th Cir. 1998) ......................................................23

*Behrens v. Pelletier*,
    516 U.S. 299, 312-13 (1996) .........................................................................3

*Bingue v. Prunchak*,
    512 F.3d 1169, 1172-73 (9th Cir. 2008) ..................................................3, 22

*Bd. of County Commr's v. Brown*,
    520 U.S. 397, 405 (1997) .............................................................................30

*Brosseau v. Haugen*,
    543 U.S. 194, 199-200 (2004) ......................................................................27

*City of Cuyahoga Falls, Ohio v. Buckeye Cnty. Hope Found.*,
    538 U.S. 188, 194 (2003) .............................................................................23

*Davidson v. Am. Online, Inc*.,
    337 F.3d 1179, 1192 (10th Cir. 2003) .........................................................24

*Davoll v. Webb*,
    194 F.3d 1116, 1145 (10th Cir. 1999) .........................................................23

*Dodds v. Richardson*,
    614 F.3d 1185, 1191 (10th Cir. 2010) ...................................................20, 26

*Drake v. City of Fort Collins*,
    927 F.2d 1156, 1159 (10th Cir. 1991) .........................................................22

*Enquist v. Oregon Dept. of Agr.*,
    553 U.S. 591, 607 (2008) ...............................................................................23

*Ferguson v. Brian Webster, P.A.*,
    493 Fed.Appx. 982, 983 (10th Cir. 2012) .......................................................4

*Fleites v. Pueblo Med. Investors*,
    Civ. No. 07-cv-02658-REB-MJW, 2008WL4371924, at *1 (D. Colo., Sept.
22, 2008) ....................................................................................................32

*Fogarty v. Gallegos*,
    523 F.3d 1147, 1161 (10th Cir. 2008)..................................................... 26-27

*Gross v. Pirtle*,
    245 F.3d 1151, 1155 (10th Cir. 2001)..................................................... 19-20

*Hansen v. Rimel*,
    104 F.3d 189, 190 n.3 (8th Cir. 1997)............................................................23

*Harman v. Pollock*,
    586 F.3d 1254, 1261 (10th Cir. 2009)............................................................26

*Hedva Bank v. Allied Jewish Federation of Colo.*,
    Civ. No. 12-cv-03274-LTB-KLM, 2013WL 6489997, at *2 (D. Colo. Dec.
10, 2013) ...................................................................................................32

*Holbrook v. City of Alpharetta*, *Ga.*,
    112 F.3d 1522, 1531 (11th Cir.1997)............................................................28

*Howards v. McLaughlin*,
    634 F.3d 1131, 1138-39 (10th Cir. 2011).........................................................2

*Jiron v. City of Lakewood*,
    392 F.3d 410, 419 (10th Cir. 2004)..............................................................31

*Johnson v. Jones*,
    515 U.S. 304, 319 (1995) .................................................................................4

*Kearns v. Bader*,
    663 F.3d 1173, 1183 (10th Cir. 2011).........................................................27

*Keller v. Bd. of Educ. of City of Albuquerque, N.M.*,
  182 F.Supp.2d 1148, 1159 (D. N.M. 2001)....................................................27

*Laidley v. McClain*,
  914 F.2d 1386, 1394-95 (10th Cir. 1990)........................................................4

*Lewis v. Tripp*,
  604 F. 3d 1221, 1225-26 (10th Cir. 2010)........................................................4

*Lollar v. Baker*,
  196 F.3d 603, 609–10 (5th Cir.1999) ............................................................28

*Lowe v. Town of Fairland, Okla.*,
  143 F.3d 1378, 1380 (10th Cir. 1998) ............................................................3

*Maxey v. Banks*,
  26 Fed.Appx. 805, 808-09 (10th Cir. 2001) ..................................................30

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)........................................................................................1

*Moore v. City of Wynnewood*,
  57 F.3d 924, 930 (10th Cir. 1995) .................................................. 4-5, 31, 32

*Neal v. Lewis*,
  414 F.3d 1244, 1247-48 (10th Cir. 2005).......................................................20

*Patrick v. Miller*,
  953 F.2d 1240, 1243 (10th Cir.1992) ........................................................26, 27

*Pearson v. Callahan*,
  555 U.S. 223, 236 (2009) .............................................................................25

*Pembauer v. City of Cincinnati*,
  475 U.S. 469, 481 (1986) ...............................................................................5

*Ramirez v. Dep't of Corr. Colo.*,
  222 F.3d 1238 (10th Cir. 2000) .............................................................. 27-28

*Reichle v. Howards*,
   132 S.Ct. 2088 (2012)........................................................................2

*Roosevelt-Hennix v. Prickett*,
   717 F.3d 751, 754 (10th Cir. 2013) .................................................4

*Steward v. New Chrysler*,
   415 Fed.Appx. 632, 642 (6th Cir. 2011) ........................................24

*Taylor v. Carter*,
   960 F.2d 763, 764 (8th Cir. 1992) ...............................................1, 5

*Treadwell v. Alexander*,
   707 F.2d 473, 478 (11th Cir. 1983) ...............................................24

*Trujillo v. Univ. of Colo. Health Sciences Ctr.*,
   157 F.3d 1211, 1215 (10th Cir. 1998) ...................................... 22-23

*Vinson v. Thomas*,
   288 F.3d 1145, 1155-56 (9th Cir. 2002)....................................28, 29

*Wernecke v. Garcia*,
   591 F.3d 386, 391 (5th Cir. 2009) .........................................2, 3, 22

**STATEMENT OF RELATED CASES**

There are no prior or related cases or appeals.

# I.  JURISDICTIONAL STATEMENT

## A.    District Court Subject-Matter Jurisdiction

The United States District Court for the District of Colorado has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §1331 and §1367(a). Plaintiff, Jason Ragsdell, brought suit against the Defendants, Regional Housing Alliance of La Plata County ("RHA"), its former Director, Jennifer Lopez and another entity, the La Plata Homes Fund ("LPHF"), alleging a violation of the Rehabilitation Act of 1973, 29 U.S.C. §701 *et. seq.*, and to redress alleged deprivations of Mr. Ragsdell's rights under the Fourteenth Amendment of the United States Constitution.  Additionally, Mr. Ragsdell brought several state law claims that arise from the same facts and form a part of the same case or controversy under Article III of the United States Constitution.

## B.    Basis for Jurisdiction of the 10th Circuit Court of Appeals

The United States Court of Appeals for the Tenth Circuit has jurisdiction over this matter pursuant to 28 U.S.C. §1291, because "[a] district court's denial of a motion to dismiss a claim on the basis of qualified good-faith immunity is a final appealable decision. . . ."  **Taylor v. Carter**, 960 F.2d 763, 764 (8th Cir. 1992) (citing **Mitchell v. Forsyth**, 472 U.S. 511 (1985)).

Pursuant to the Court's Order of April 3, 2014, the Parties have been directed to address with specificity the Court's appellate jurisdiction in light of the

1

district court's statement, "[T]he record is not clear enough to rule on Defendant Lopez's qualified immunity issue." [App. IV at 1029][1]. In light of this finding, this Court has jurisdiction for several reasons.

First, the Court has appellate jurisdiction to review whether the right allegedly violated by the RHA and Ms. Lopez was "clearly established" at the time of the violation. *Howards v. McLaughlin*, 634 F.3d 1131, 1138-39 (10th Cir. 2011) (reversed and remanded on other grounds by *Reichle v. Howards*, 132 S.Ct. 2088 (2012)). The District Court stated in conclusion, "Without knowing what rights [Ms. Lopez] violated, I cannot say whether she was on notice that her acts would violate [Mr. Ragsdell's] rights." [App. IV at 1029]. This raises a purely legal issue for appellate review concerning whether the rights which were allegedly violated were "clearly established."

Second, appellate jurisdiction exists to review whether an official's actions would, as a matter of law, be objectively unreasonable in light of clearly established law. *Wernecke v. Garcia*, 591 F.3d 386, 391 (5th Cir. 2009). According to this standard, the Court is permitted to review whether the acts as alleged were violative of clearly established law. This basis for appellate jurisdiction differs from that noted above in that the Court has jurisdiction to

---

[1] Cites to the appendix contained herein refer to the appendix as "App." and cite to the specific volume and page of the appendix which are pertinent, as well as the line and page of any deposition testimony.

review the facts as found in relation to established law, as opposed to the simple determination of the existence of established law.  The district court entered thorough findings of fact.  Under this basis for appellate jurisdiction, the Court can review the alleged actions of Ms. Lopez to determine whether the facts as alleged by Mr. Ragsdell and as found by the district court, could violate established law.

Third, denial of a summary judgment motion on the issue of qualified immunity is not rendered unappealable simply because the District Court finds that there are issues of fact remaining.  *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996).  The materiality, as opposed to the genuineness, of a factual dispute with respect to qualified immunity is a legal issue, which is, therefore, subject to interlocutory appellate review.  *Bingue v. Prunchak*, 512 F.3d 1169, 1172-73 (9th Cir. 2008); *Wernecke*, 591 F.3d at 390.  The Court, therefore, has jurisdiction to review whether the facts that the District Court below found to be in dispute are "material" with respect to the issue of qualified immunity.

Finally, the District Court may not delay or postpone a ruling on the defense of qualified immunity once it has been raised in a motion to dismiss or motion for summary judgment.  *Lowe v. Town of Fairland, Okla.,* 143 F.3d 1378, 1380 (10th Cir. 1998).  When the district court fails to properly articulate the reasons for denying a motion for summary judgment raising the defense of qualified immunity, the appellate court may undertake a  review of the record to determine

3

what facts the district court, in the light most favorable to Mr. Ragsdell, likely assumed.  ***Roosevelt-Hennix v. Prickett***, 717 F.3d 751, 754 (10th Cir. 2013) (citing ***Johnson v. Jones***, 515 U.S. 304, 319 (1995)).  Further, when the facts which the district court holds that a jury could find are "blatantly contradicted by the record," this Court has jurisdiction to assess the facts *de novo* to determine which facts a reasonable jury could accept as true.  ***Lewis v. Tripp***, 604 F. 3d 1221, 1225-26 (10th Cir. 2010), *see also* ***Laidley v. McClain***, 914 F.2d 1386, 1394-95 (10th Cir. 1990)(superseded by rule and overruled on other grounds).  In this matter, the District Court has impermissibly delayed and avoided a decision on the issue of qualified immunity.  This delay and avoidance by the District Court gives this Court appellate jurisdiction to review *de novo* whether the facts which prevented a grant of summary judgment are blatantly contradicted by the record.  In the alternative, the Court may remand the issue of qualified immunity for a determination by the district court, should the Court find, as Appellants assert, that the issue was not properly addressed in the first instance.  ***Ferguson v. Brian Webster, P.A.***, 493 Fed.Appx. 982, 983 (10th Cir. 2012).

This Court also has jurisdiction to consider the denial of RHA's Motion for Summary Judgment given the inextricably intertwined relationship between RHA's potential liability and the liability of Ms. Lopez.  *See* ***Moore v. City of Wynnewood***, 57 F.3d 924, 930 (10th Cir. 1995) (holding that pendent appellate

jurisdiction is appropriate when "resolution of the collateral appeal *necessarily* resolves the pendent claim as well.") (emphasis in original). At the time of Mr. Ragsdell's employment, the RHA was a small government entity, consisting of only four employees. As Director, Ms. Lopez was a policymaker for purposes of institutional liability. ***Pembauer v. City of Cincinnati***, 475 U.S. 469, 481 (1986). Given that Mr. Ragsdell does not cite an actual policy which led to his alleged constitutional deprivation, his claim against the RHA must rest on actions taken by Ms. Lopez in her capacity as the Director. Therefore, a ruling on appeal which determines that Ms. Lopez did not commit any constitutional violations will also *necessarily* negate any liability of behalf of the RHA. Pendent jurisdiction is therefore appropriate because the issues raised in RHA's appeal are "no broader than those in [Lopez'] permissible collateral appeal . . . ." ***Moore***, 57 F.3d at 930. Finally, as the remaining state law claim against the RHA is premised on the same facts which Mr. Ragsdell bases his equal protection claim, such claims are also subject to pendent jurisdiction as noted in ***Moore***. ***Id.*** at 930 (holding state law claim against a governmental entity based on the same alleged constitutional violation on appeal was subject to pendent appellate review).

## C.    Timeliness of Appeal

The appeal in this matter is governed by a 30 day time limit from entry of judgment noted in Fed.R.App.P. 4(a)(1)(A). ***Taylor***, 960 F.2d at 764. The District

Court's Order was entered on March 12, 2014, and RHA and Ms. Lopez filed their

Notice of Appeal on March 20, 2014, within eight days of the entry of judgment.

## II.  ISSUES  PRESENTED FOR REVIEW

### A.    Primary Issue

Governmental officials are afforded qualified immunity from suit when their

conduct does not violate clearly established law.  In light of this legal axiom, did

the District Court improperly deny Ms. Lopez's defense of qualified immunity

when her actions as found by the District Court and as alleged by Mr. Ragsdell did

not violate clearly established law?

### B.    Secondary Issue

Are Mr. Ragsdell's remaining claims against the RHA coterminous with, or

subsumed in his remaining claims against Ms. Lopez, which Ms. Lopez has been

denied the defense of qualified immunity that is the subject of this appeal?

## III.   STATEMENT OF THE CASE

Mr. Ragsdell's Complaint asserted four claims for relief against the RHA,

Ms. Lopez and the LPHF, a funding entity associated with the RHA.  [App. I at 17-

33].   Mr. Ragsdell alleged that the Defendants illegally, severely, and/or

pervasively harassed him thereby altering the conditions of his employment

resulting in his constructive discharge.  [App. I at 28 ¶53].  Based on Ms. Lopez's

alleged actions taken on behalf of the RHA and LPHF, Mr. Ragsdell brought

claims for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment alleging a Denial of Equal Protection, the Rehabilitation Act of 1973, the Colorado Anti-Discrimination Act ("CADA"), and the common law claim of Wrongful Discharge in Violation of Public Policy.  [App. I at 17-33].  All claims, except for the CADA claim, were made against all Defendants. [App. I at 17-33].  The CADA claim, which cannot stand against individuals, was brought only against the entity Defendants.  [App. I at 30-32].

After completion of discovery, including written interrogatories and depositions, all Defendants moved for summary judgment on all of Mr. Ragsdell's claims.  [App. I at 52-100; App. IV at 911-931].  All claims against the LPHF were dismissed on summary judgment, with Senior District Court Judge Kane finding that the LPHF was not an employer.  [App. IV at 1017-1019, 1029].  Judge Kane also dismissed the Rehabilitation Act against the RHA and Ms. Lopez.  [App. IV at 1027-1028].  Further, Judge Kane found that Mr. Ragsdell was not subject to constructive discharge, and additionally that the RHA was entitled to governmental immunity from the common law wrongful discharge claim, pursuant to the Colorado Governmental Immunity Act.  [App. IV at 1026-1028].

The District Court denied summary judgment on behalf of Ms. Lopez and the RHA on Mr. Ragsdell's equal protection and CADA claims, finding that "[t]here are genuine issues of material fact that preclude summary judgment," and

7

further, "that the record is not clear enough to rule on Defendant Lopez's qualified immunity issue." [App. IV at 1028-1029].

## IV.   STATEMENT OF THE FACTS[2]

RHA is a small community based housing assistance organization, with four employees during the relevant time period, helping low to middle income individuals and families purchase homes in southwestern Colorado.  RHA is a governmental entity and operates under a funding agreement between La Plata County, the City of Durango and the Towns of Ignacio and Bayfield. [App. I at 54, ¶1; App. I at 19, ¶ 6; App. I at 102, 39:9-16; App. II at 396; App. IV at 1004].

In February 2011, Mr. Ragsdell was hired by the RHA, over three or four candidates who interviewed, to be a Client Services Advisor.  [App. I at 55-56, ¶10; App. II at 256:23-257:8, 258:9-261:10;, App. II at 398; App. IV at 1005]. When Mr. Ragsdell was hired, both the Director of the RHA, Ms. Lopez, and the Deputy Director, Julie Levy, were aware that Mr. Ragsdell had Multiple Sclerosis, but they were not concerned that his condition would be an issue with his employment. [App. I at 55-56; App. II at 398, ¶11; App. IV at 1005].

---

[2] For this appeal, as asserted in the District Court, Defendants, to avoid disputes over material facts, accept those facts made by Mr. Ragsdell which were supported by competent evidence.  Defendants further accept the factual findings of Judge Kane made in his Order of March 12, 2014.  If this case proceeds to trial, a number of these assertions will be vehemently contested by Defendants.

One of the essential functions of the Client Services Position was filing and maintaining client files.  Mr. Ragsdell acknowledged that those tasks were essential functions of the Client Services Position, although he asserts that they were not "of foremost importance." [App. II at 400, ¶16].  Specifically, Mr. Ragsdell testified as follows:

> Q   Is filing and maintaining client files one of your job responsibilities?
> A   Yes
> Q   Would you say it was an essential function of your job?
> A   Yes.
> Q   Why is it important?
> A   Well, we were dealing with financial documents in some instances, so they have to be there, and they have to be filed. [App. I at 171:7-16].

From Mr. Ragsdell's date of hire through February 2011, Ms. Levy was Mr. Ragsdell's direct day-to-day supervisor.  [App. IV at 1005].  During her tenure, Ms. Levy was responsible for signing Mr. Ragsdell's timesheets and conducting Mr. Ragsdell's performance evaluations.  [App. I at 56, ¶12; App. I at 195:20:196:9; App. II at 263:25-264:9, 272:25-273:1].  In the fall of 2010, after his first six months of probationary employment, Mr. Ragsdell received a performance evaluation from Ms. Levy.  The initial evaluation was conducted to gauge Mr. Ragsdell's growth in the first six months of his employment.  Though Mr. Ragsdell received a generally positive review, the evaluation did not result in a pay raise.

[App. I at 57-58, ¶18; App. II at 279:22-282:10; App. II at 291-295; App. IV at 1005-1006].

Six months later, in the beginning of 2011, Ms. Levy took a job in the private sector and announced she was leaving the RHA. This change meant that Ms. Lopez would become directly involved with Mr. Ragsdell's day-to-day management. Before she left her employment with the RHA, Ms. Levy sought a specific document from a client file. When both she and Mr. Ragsdell were unable to locate the document in the file, Ms. Levy became concerned that loans for which Mr. Ragsdell was responsible were at risk and that the RHA's resources were not protected. Upon realizing the status of the files, Ms. Levy consulted with Ms. Lopez and voiced her concern that the status of the files may cause issues with the upcoming audit. [App. I at 60, ¶28; App. II at 284:3-285:11; App. IV at 1006].

On February 7, 2011, subsequent to Ms. Levy announcing that she was leaving, Mr. Ragsdell received his one year performance review from Ms. Levy. Mr. Ragsdell's capabilities, as rated by Ms. Levy, stayed generally the same with the exception of Ms. Levy's Product/technical knowledge and time management ratings in section B4 of the evaluation. The scores for Product/technical knowledge and Time management received a one and two point deduction, respectively, between the six-month and one year evaluations. [App. I at 60-61, ¶29; App. I at 112:7-114:1; App. II at 323-325]. Around the same time as Mr.

10

Ragsdell's one-year performance evaluation, and after Ms. Levy had informed the RHA that she would be leaving, Mr. Ragsdell informed Ms. Lopez that he had applied for another job as a radio DJ. [App. I at 61, ¶30; App. I at 182:14-183:10; App. II at 328; App. IV at 1006]. On February 21, 2011, Mr. Ragsdell also applied for a Merchant Operations Coordinator position at Mercury Payment Systems. [App. I at 64, ¶39; App. I at 216:20-217:13; App. II at 332-335].

In reaction to the upcoming departure of Ms. Levy and to Mr. Ragsdell's request to take on more responsibilities, and in an attempt to persuade Mr. Ragsdell from leaving the RHA for other employment, thereby leaving the RHA with only two employees, Mr. Ragsdell received a raise and additional responsibilities. At the time of Mr. Ragsdell's raise, Ms. Lopez was "fairly unaware" of Mr. Ragsdell's previous performance. Shortly after Mr. Ragsdell received the raise, and shortly before Ms. Levy left the RHA, she informed Ms. Lopez of Mr. Ragsdell's deficiencies. After Ms. Levy informed Ms. Lopez about Mr. Ragsdell's various deficiencies, the three met for a short meeting in which the various issues with Mr. Ragsdell's employment were discussed. At the close of the meeting, Ms. Levy compiled a memorandum documenting her concerns that were discussed in the meeting. [App. I at 61-62, ¶¶31-35; App. I at 110:8-111:20; App. II at 329; App. IV at 1006-1007].

Around the time of the meeting to discuss Mr. Ragsdell's employment deficiencies, between February 7th and 17th, 2011, he informed Ms. Lopez that his medical condition would require him to increase his medical visits to Denver from twice per year to four times per year. Between the date of Mr. Ragsdell's announcement concerning his need for additional trips to Denver, and the date Mr. Ragsdell quit, Mr. Ragsdell attended one of the requisite four yearly trips, and was never denied the right to attend his medical appointments. [App. I at 63, ¶37; App. I at 208:24-209:10; App. I at 231:22-232:13; App. IV at 1007].

In late January 2011, in an effort to prepare the RHA for upcoming federal audits and to provide temporary support to the client services activities because of Ms. Levy's departure, the RHA hired Marietta Linney as a temporary assistant to ensure that files closed during Mr. Ragsdell's tenure would pass audit. Just after Ms. Linney was hired, on Friday January 28, 2011, Ms. Lopez directed Mr. Ragsdell to spend the following Tuesday morning with Ms. Linney in an effort to get Mr. Ragsdell's files in order. In preparing for the upcoming audit, Ms. Linney became concerned about the condition of the files and what had not been done. In addition to preparing closed files for audit, Ms. Linney also assisted Mr. Ragsdell in organizing his other open/intake files. Ms. Linney recalled that the client intake files were strewn about Mr. Ragsdell's office, "on the floor all over, spread all over some on the counter, some on the filing cabinets, kinda everywhere." Though Mr.

Ragsdell maintains that his files were in disarray because Ms. Lopez had directed him to reorganize files, this reorganization was not directed until after the office move in early April 2011.  [App. I at 64-66, ¶¶41-47; App. II at 305:1-7; App. II at 340, ¶¶2-4, 7-10; App. IV at 1007].

At the end of March, near the approach of the audits and prior to the office move, Ms. Lopez sent Mr. Ragsdell two emails, on March 24 and 25, 2011.  In the emails, Ms. Lopez stated:

- "Jason- It would be prudent to tidy your office up for the auditors next week—if you need to come in this weekend to do so I would let you bank the hours-thanks"  [App. I at 66, ¶48; App. II at 342; App. IV at 1008].

- Jason—please do as much as you can around audit finalization—if you don't get it all done today would you consider coming in this weekend?  [App. I at 66, ¶48; App. II at 393; App. IV at 1008].

As suggested, Mr. Ragsdell came in on the weekend and completed the tasks as requested.

In the beginning of March 2011, Mr. Ragsdell went on a pre-approved two week European vacation, returning to work at the RHA on March 15, 2011.  [App. I at 66, ¶50; App. I at 200:6-25; App. IV at 1008].  On the day following his return to work, Mr. Ragsdell attended a one-hour phone interview arising from his previous application to Mercury Payment Systems and also asserts that he attended a dentist appointment.  [App. I at 64, ¶39; App. I at 224:21-227:14; App. II at 336-338; App. IV at 822].  On the day after he returned from a two week European

13

vacation, when the office was admittedly busy, and on the same day which Mr. Ragsdell attended a dentist appointment and a one-hour phone interview with another prospective employer, Ms. Lopez sent an email noting her concern that Mr. Ragsdell's leave accruals were low due to the recent vacation, and informing Mr. Ragsdell that he may want to think about banking hours in order to ensure that he had enough leave time accrued to accommodate his upcoming medical appointments.  [App. II at 345; App. IV at 822; App. IV at 1008].

In early April 2011, with Pam Moore coming on as Deputy Director, the employees of the RHA discussed switching offices.  In discussing the office moves, Mr. Ragsdell noted that the move to another office would "be better for [him] anyways because it would be cooler."  [App. I at 68, ¶56; App. I at 207:12-21; App. IV at 1008].  On the day prior to the office move, March 28, 2011, Ms. Lopez asked Mr. Ragsdell to sign an acknowledgment form concerning Red Flag Rules.  The Red Flag Rules addressed confidentiality and proper care of personal information to ensure that it was not inadvertently disclosed to the public.  Mr. Ragsdell testified in deposition that he believed Ms. Lopez asked him to sign the rules so she could later accuse him of violating the rules.  [App. I at 68, ¶57; App. I at 191:3-23; App. IV at 1008-1009].

On a weekend in early April 2011, RHA staff, as well as the husbands of two employees, moved all of the furniture, including filing cabinets, from Mr.

14

Ragsdell's old office, across the hall to his new office. [App. I at 152:22-153:3]. During the workweek following the move, Mr. Ragsdell was sitting in the lobby and asserts that Ms. Lopez asked him, "What are you doing? Just chillaxin?" and then asked Mr. Ragsdell to assist in finishing up with the remaining move items. [App. I at 153:9-20]. Mr. Ragsdell asserted that by assisting in the office move he, "felt [he] would have just been more in the way than helpful." [App. I at 154:3-7]. Mr. Ragsdell requested assistance in moving files from one office to the other, and further asserted that "[h]aving someone do it for me was the only answer." [App. I at 208:3-6]. Despite Mr. Ragsdell's assertion that he was physically unable to move the files, he acknowledges and admits that he in fact did physically move all of the files and other small items over to the new office with the assistance of a rolling chair, and without other personal assistance, which he asserted "was the only answer." [App. I at 69, ¶60; App. I at 221:15-22; App. IV at 1009].

Subsequent to the move, on April 5, 2011, Ms. Lopez emailed Mr. Ragsdell instructing him on the list of priorities for that week, which included an instruction to Mr. Ragsdell to get his new office settled as soon as possible. [App. I at 69, ¶61; App. I at 128:23-131:19; App. II at 347; App. IV at 1009]. Mr. Ragsdell perceived the April 5, 2011 email as harassing, asserting that Ms. Lopez was aware that such a task was a burden due to his medical condition. [App. II at 417-418, ¶61; App. IV at 1009]. More than one week later, on April 13, 2011, Ms. Lopez

sent Mr. Ragsdell another list noting the tasks to be addressed that week, which again instructed Mr. Ragsdell to "Finish filing and settling into the office, organizing files etc." [App. I at 70, ¶62; App. I at 132:5-13; App. II at 348; App. III at 762].

Ms. Lopez's email of April 13, 2011, also expressed concern over her belief that Mr. Ragsdell had exhausted his available sick leave after Mr. Ragsdell had recently taken time off for a chest cold. [App. I at 70, ¶62; App. I at 133:12-134:8; App. I at 205:20-206:12; App. II at 348; App. III at 762]. Mr. Ragsdell perceived this email as Ms. Lopez's "umpteenth" inquiry into his available leave time. [App. II at 418, ¶63; App. IV at 884:1-6; App. IV at 1010]. The record reveals that this was only the second time that Ms. Lopez had addressed Mr. Ragsdell's leave. Mr. Ragsdell cordially responded to the April 13, 2011, clarifying that he had one day of sick leave remaining, one day of vacation, and two days of comp remaining, but that he would be putting in extra hours anyway. [App. I at 70, ¶63; App. I at 133:12-134:8; App. I at 205:23-206:21; App. IV at 1010]. Pursuant to Mr. Ragsdell's response, he admits that by the middle of April, he had only 4 days of paid leave remaining.

By April 25, 2011, nearly one month after the office switch and almost two weeks after Ms. Lopez's email of April 13, 2011, Mr. Ragsdell had not arranged his office or properly put the files in their appropriate place. [App. I at 70, ¶64;

16

App. I at 155:7-157:24; App. IV at 1010].  On the evening of April 25, 2011, Ms. Lopez forwarded one email and two memos to Mr. Ragsdell and again asked him to acknowledge the Red Flag Rules.  The email directed Mr. Ragsdell "to have [his] office in immaculate condition with all files properly filed by wed [sic] at 8 am," and further stated, "I need to see better performance from you immediately." [App. I at 70-71, ¶65; App. II at 389; App. II at 475 (53:13-54:1, 54:23-55:1); App. IV at 1010].

Though Mr. Ragsdell perceived and characterizes Ms. Lopez's correspondence from April 25, 2011, to be unwarranted scrutiny and threats of termination, it is also undisputed: (1) he acknowledged that the programmatic changes, taken on their own, were not inappropriate instructions, [App. I at 71, ¶66; App. I at 155:7-157:24; App. IV at 1010]; (2) he acknowledged that certain job performance issues raised were not unreasonable on their own, [App. I at 71, ¶66; App. I at 172:4-7; App. IV at 1010]; and (3) he asserted that he had completed "every single directive that Ms. Lopez had given, with the exception of reorganizing the files."  [App. II at 419].  Further, though Mr. Ragsdell asserted that it was a difficult and unreasonable request for him to physically interact with the RHA files, by the morning of April 26, 2011, when he received the correspondence of April 25, 2011, "[he] had made such progress on the files that only minutes of work for a non-disabled employee remained."  [App. II at 421,

¶67].  On the morning of April 26, 2011, Mr. Ragsdell requested assistance from Ms. Linney to arrange the files in his office, a task which Ms. Linney and Mr. Ragsdell completed in a matter of minutes.  [App. I at 71, ¶67; App. I at 229:22-230:21; App. IV at 1011].

Ms. Lopez was out of the office on April 26, 2011, on a field trip with her son[3].  On the morning of April 27, 2011, Mr. Ragsdell was angry and wanted to speak with Ms. Lopez.   [App. I at 71, ¶68; App. I at 177:4-15].  Though there was a period of time in which Ms. Lopez and Mr. Ragsdell were in the office at the same time on the morning of April 27, 2011, Ms. Lopez stated that she would speak with Mr. Ragsdell when she returned from her morning meetings.  Without waiting for Ms. Lopez to return, Mr. Ragsdell quit his employment with the RHA.  [App. I at 71-72, ¶¶68-69; App. I at 184:23-186:4; App. IV 1011].

## V.   SUMMARY OF THE ARGUMENT

After Ms. Lopez raised the defense of qualified immunity, (1) Mr. Ragsdell failed to demonstrate that under 42 U.S.C. §1983, Ms. Lopez's alleged actions deprived him of his right to equal protection under the laws; and (2) Mr. Ragsdell failed to show that the right of which he was allegedly deprived was clearly established at the time of Ms. Lopez's alleged conduct.  Pursuant to the facts as

---

[3] This fact is not disputed by Mr. Ragsdell.  [Compare App. I at 71 ¶68 and App. II at 422, ¶68]. Though a different date is stated in the District Court's summary judgment order, the confusion of the dates does not create a dispute of material fact.

found by the District Court, and those allegations of Mr. Ragsdell which are supported by facts in the record, none of the alleged actions by Ms. Lopez, including alleged denial of accommodation, could be found to have deprived Mr. Ragsdell of his rights to equal protection under the law.  Further, there was no applicable legal precedent clearly establishing a right that any of Ms. Lopez's actions could be found to violate.  To the contrary, the law from other circuits provides that there is no claim for denial of equal protection under 42 U.S.C. §1983. Rather, the Rehabilitation Act preempts such a claim.  While the Tenth Circuit has not yet ruled on this issue, the weight of the law from the other Circuits is that there is no claim for a violation of equal protection under the facts of this case.

Moreover, because the remaining claims against the RHA are so inextricably intertwined with the issues of the first prong of qualified immunity, a grant of qualified immunity on the first prong on behalf of Ms. Lopez necessarily abrogates liability on behalf of the RHA on the remaining claims.

## VI.   ARGUMENT

**A.     Ms. Lopez is entitled to qualified immunity as a matter of law.**

### (1)     Standard of Review

Appellate review of a denial of summary judgment raising the defense of qualified immunity is reviewed on a *de novo* basis.  ***Gross v. Pirtle***, 245 F.3d 1151,

1155 (10th Cir. 2001). However, due to the underlying purposes of qualified immunity, the appellate court's review of a denial of summary judgment on the issue of qualified immunity is different from traditional *de novo* review of a summary judgment motion. ***Id.*** When a defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to satisfy a two part test. ***Neal v. Lewis***, 414 F.3d 1244, 1247-48 (10th Cir. 2005). As such, on *de novo* review of the denial of qualified immunity, the appellate court applies the same standard as the district court to determine whether the plaintiff has satisfied this heavy two-part burden. ***Gross***, 245 F.3d at 1156.

Here, because Ms. Lopez raised the defense of qualified immunity, the 'heavy two part burden' fell on Mr. Ragsdell to clearly show: (1) that Ms. Lopez's actions violated Mr. Ragsdell's constitutional rights; and (2) that this right was clearly established at the time of Ms. Lopez's conduct. ***Dodds v. Richardson***, 614 F.3d 1185, 1191 (10th Cir. 2010). Though review of the evidence is in the light most favorable to Mr. Ragsdell, the record must clearly demonstrate that Mr. Ragsdell has satisfied this heavy two-part burden; otherwise, Ms. Lopez is entitled to qualified immunity. ***Gross,*** 245 F.3d at1156. Failure to satisfy either prong of the two-part inquiry requires a grant of qualified immunity on behalf of the party raising it. ***Albright v. Rodriguez***, 51 F.3d 1531, 1535 (10th Cir. 1995).

**(2)    Mr. Ragsdell failed to demonstrate that Ms. Lopez's alleged actions resulted in violation of Mr. Ragsdell's constitutional rights.[4]**

The alleged discriminatory actions of Ms. Lopez did not, and could not, equate to a violation of Mr. Ragsdell's constitutional rights. The admissions and acknowledgments of Mr. Ragsdell, as well as the factual and legal findings of the District Court, demonstrate that Ms. Lopez's actions were not violative of Mr. Ragsdell's constitutional rights.

The District Court unequivocally found that Ms. Lopez's alleged actions did not result in constructive discharge. In so finding, the District Court relied on Mr. Ragsdell's own acknowledgments that the memos and emails which he perceived as unduly harassing were, taken on their own, facially innocuous. Throughout Ms. Lopez's written and verbal interactions with Mr. Ragsdell, he was never subjected to name calling or verbal abuse. Nor was Mr. Ragsdell ever threatened with demotion, suspension, transfer, reassignment or reduction in pay. (App. IV p. 1023). Viewing all evidence in the light most favorable to Mr. Ragsdell, it is, and

---

[4] A decision on qualified immunity is subject to *de novo* review on appeal. Nonetheless, the District Court's conclusion stated, "I hold that the record is not clear enough to rule on Defendant Lopez's qualified immunity issue. The record does not permit me to determine whether she in fact did violate Mr. Ragsdell's rights" [App. IV, 1029]. This clearly shows that Plaintiff failed to meet his burden to demonstrate that Ms. Lopez's actions could have violated Mr. Ragsdell's rights, and under any standard of review, reversal and remand of the denial of qualified immunity is appropriate.

always has been, clear that there was no objective evidence of intolerable working conditions stemming from Ms. Lopez's alleged criticism and/or scrutiny.

While the ADA is inapplicable to this matter, Mr. Ragsdell asserted that a factual dispute concerning denial of reasonable accommodation should have prevented summary judgment in this matter.  In denying Ms. Lopez the defense of qualified immunity, the District Court found that questions remained, but only specifically noted an initial denial of request for accommodation in the form of having someone else move the files for which Mr. Ragsdell was responsible. While the allegations regarding denial of accommodation may conceivably present a factual question, as noted in the jurisdictional statement, this Court is permitted to review questions of fact for materiality. ***Bingue***, 512 F.3d at 1172-73; ***Wernecke***, 591 F.3d at 391.

In order to make a claim for denial of equal protection, even assuming such a claim lies for an alleged violation of the ADA or the Rehabilitation Act[5], Plaintiff must show "a situation where the employer simply treats some people less favorably than others because of their [protected class]." ***Drake v. City of Fort Collins,*** 927 F.2d 1156, 1159 (10th Cir. 1991) (internal quotations omitted).  To establish a prima facie case of disability discrimination under §1983, Plaintiff must demonstrate: (1) he is a member of a protected class; (2) he suffered an adverse

---

[5] See Section 3(a) of this Brief below.

employment action; and (3) similarly situation employees were treated differently. *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). To state a claim under §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must show that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998); *see also City of Cuyahoga Falls, Ohio v. Buckeye Cnty. Hope Found.*, 538 U.S. 188, 194 (2003) ("proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.")(internal quotes omitted). "Although protected by statutory enactments such as the Americans with Disabilities Act, the disabled do not constitute a 'suspect class' for purpose of equal protection analysis." *Davoll v. Webb,* 194 F.3d 1116, 1145 (10th Cir. 1999) (citing *Hansen v. Rimel*, 104 F.3d 189, 190 n.3 (8th Cir. 1997). Further, to the extent Plaintiff is asserting a class of one theory under the Equal Protection Clause, such a claim is not available in the public employment context. *Enquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 607 (2008). As such, Plaintiff must prove purposeful discrimination based upon his disability for this claim to survive summary judgment.

The evidence is clear that Mr. Ragsdell had difficulty keeping up with filing and file organization. However, he cannot show that he was treated differently

from anyone else in this regard.  In point of fact, Ms. Linney, another employee of the RHA, provided assistance to Plaintiff, with respect to his essential filing duties.  [App. I at 71, ¶67; App. I at 229:22-230:21; App. IV at 1011].   No one else at the RHA had, or required, such assistance.

Plaintiff also questions whether he should have received more assistance in filing and file maintenance.  Although Mr. Ragsdell questions whether filing and file maintenance were "of the utmost importance," it is undisputed that these tasks were essential duties under Mr. Ragsdell's job description.  Despite that fact, Mr. Ragsdell asserts that the only reasonable accommodation for movement and maintenance of files was "[h]aving someone do it for [him]."  The law is clear, however, that "job restructuring" or assigning existing employees to perform another employee's essential job functions is not a reasonable accommodation. *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1192 (10th Cir. 2003). *Steward v. New Chrysler*, 415 Fed.Appx. 632, 642 (6th Cir. 2011).  It is not reasonable or feasible for an entity the size of the RHA, with only four employees, to require other employees to perform Mr. Ragsdell's essential job tasks.  See *Treadwell v. Alexander*, 707 F.2d 473, 478 (11th Cir. 1983).  For these purely legal reasons, any initial denial of accommodation could not have been wrongful, because the requested accommodation was not reasonable as a matter of law.  Further, and more tellingly, Mr. Ragsdell acknowledges: (1) he actually accomplished the task

of moving all of the files without someone else helping him; and (2) he was capable of organizing and addressing the filing issues so that when he did receive help from Ms. Linney, only minutes of work remained.

For the purpose of Plaintiff's Equal Protection claim, he cannot meet any of the requirements.  For Equal Protection purposes, Mr. Ragsdell is not a member of a protected class, he did not suffer an adverse job action of any sort, and the other few employees of the RHA were not treated differently.  Taking all alleged facts in the light most favorable to Mr. Ragsdell, Ms. Lopez never denied Mr. Ragsdell a reasonable accommodation and did not act in a way to deny Mr. Ragsdell his rights under the constitution.  Pursuant to the findings of the district court, and the evidence in the record, Mr. Ragsdell failed to meet his heavy burden to demonstrate that any of Ms. Lopez's actions violated his constitutional rights.  As such, Ms. Lopez is entitled to qualified immunity as a matter of law.

### (3)    Mr. Ragsdell failed to demonstrate that the law was sufficiently clear so that Ms. Lopez would know that her actions could form the basis of an Equal Protection claim.[6]

Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In

---

[6] As quoted in footnote 4 above, the District Court's conclusion shows that Plaintiff failed to meet his burden to show with particularity Ms. Lopez allegedly violated a law that was "clearly established;" therefore, reversal and remand of the denial of qualified immunity is appropriate.

reviewing whether Mr. Ragsdell met his burden to overcome Ms. Lopez's claim of qualified immunity, analysis of the second prong demonstrates that the constitutional rights Ms. Lopez allegedly violated are far from being clearly defined.

"Qualified immunity leaves 'ample room for mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009). As part of his burden to overcome the defense of qualified immunity, Mr. Ragsdell must make a particularized showing that the law was sufficiently clear that Ms. Lopez would know that her conduct was unconstitutional. *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir. 1992). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other Courts shows that the right must be as plaintiff maintains." *Harman*, 586 F.3d at 1261. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dodds,* 614 F.3d at 1206 (citing Harman, 586 F.3d at 1261)...

The Tenth Circuit "uses a sliding scale to determine when the law is clearly established. Under this approach, [t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Fogarty v. Gallegos*, 523 F.3d

1147, 1161 (10th Cir. 2008) (internal quotations omitted). Unless the case for liability is obvious, the "clearly established" inquiry is a particularized one that requires a close identification between the act at issue and the body of precedent governing it. *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004). Therefore, a District Court should grant immunity unless existing precedent has placed the statutory or constitutional question "beyond debate." *Kearns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011). Plaintiff bears the burden of showing with particularity that the law was clearly established. *Patrick*, 953 F.2d at 1243.

### a. Case law does not exist in the 10th Circuit which would render Ms. Lopez liable under an Equal Protection claim.

Mr. Ragsdell has failed to cite a single case that clearly establishes the contours of a constitutional right that Ms. Lopez's alleged actions could have been seen to violate. This is likely due to the fact that no such cases exist. "The Tenth Circuit has been silent on the issue of whether § 1983 claims may be founded on allegations of disability discrimination." *Keller v. Bd. of Educ. of City of Albuquerque, N.M.*, 182 F.Supp.2d 1148, 1159 (D. N.M. 2001). As such, the case for liability on behalf of Ms. Lopez is far from obvious. While Mr. Ragsdell cites to *Ramirez v. Dep't of Corr. Colo.*, 222 F.3d 1238 (10th Cir. 2000) for the proposition that Ms. Lopez was on notice that her actions related to Mr. Ragsdell were unconstitutional, *Ramirez* is specifically limited to race and national origin discrimination. *See ID*. at 1243-44 ("the general notion that one cannot

discriminate on the basis of race or national origin is undoubtedly clearly established.").

Though it has not been determined in this Circuit, the other Federal Circuits that have addressed this issue have all concluded that a plaintiff may not bring an action under § 1983 to vindicate disability discrimination equal protection rights congruent with the ADA or Section 504 of the Rehabilitation Act. *Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (holding a plaintiff cannot bring an action under §1983 against a public official for violation of the ADA or the Rehabilitation Act); *Lollar v. Baker*, 196 F.3d 603, 609–10 (5th Cir.1999) ("Thus, we will assume that Congress intended to foreclose resort to the more general enforcement provisions of §1983 to vindicate the rights created by the Rehabilitation Act"); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir.1999) (finding that when the Rehabilitation Act provides an extensive, comprehensive remedial frame work that addresses every aspect of a plaintiff's claim under §1983, to permit a plaintiff to sue under both would be duplicative and provide two bites of the same apple); *Holbrook v. City of Alpharetta*, *Ga.*, 112 F.3d 1522, 1531 (11th Cir.1997). (concluding plaintiff was precluded from bringing §1983 suit against commissioners in their individual capacities for alleged violations of ADA when he could not do so directly under Title II). In so finding, these Circuits have held that the inclusion of a comprehensive remedial scheme for

the enforcement of the ADA or Rehabilitation Act, create a presumption that Congress intended to foreclose a party's ability resort to more general remedial schemes, such as a §1983 claim, to cure the alleged violation. *Vinson,* 288 F.2d at 1155-56.

The great weight of authority from other circuits, and the dearth of precedential case law in the 10th Circuit, clearly shows that Mr. Ragsdell did not, and indeed cannot, fulfill his heavy burden to provide case law clearly establishing that Ms. Lopez's alleged actions could form the basis of a § 1983 claim. For this reason, Ms. Lopez is entitled to qualified immunity as a matter of law.

### b. The ADA does not apply to the RHA, so it could not form a legal basis for Ms. Lopez's alleged liability.

It is undisputed that Title I of the ADA cannot apply to this case because the RHA does not have the requisite number of employees. Mr. Ragsdell has attempted to circumvent this fact by alleging amorphous violations that sound under Title I of the ADA including the alleged denial of accommodation, which formed at least part of the District Court's denial of summary judgment. The District Court even went so far as to state, "[] I have my doubts concerning Mr. Ragsdell's ability to prevail under the *McDonnell Douglas* test for purposes of his ADA and Section 1983 claims . . . ." [App. IV, 1029]. However, ADA case law cannot establish a clearly delineated right in this matter because the RHA and Ms. Lopez were not subject to the ADA pursuant to their limited employment of only 4

29

employees.  Further, the District Court specifically found that Ms. Lopez's alleged discriminatory actions did not violate the Rehabilitation Act.  [App. IV, 1029-1030].

### c.  The CADA does not put Ms. Lopez on notice.

A governmental entity or official can only be subjected to monetary damages or injunctive relief under § 1983 if the policy, custom, or action alleged caused plaintiff to be deprived of a *federally* protected right.  *See **Bd. of County Commr's v. Brown***, 520 U.S. 397, 405 (1997); ***Maxey v. Banks***, 26 Fed.Appx. 805, 808-09 (10th Cir. 2001).  Here, as noted above, Ms. Lopez could not be on notice that her alleged actions, which Mr. Ragsdell claimed violated the CADA, were violative of Mr. Ragsdell's constitutional rights because violations of state law cannot form the basis of an Equal Protection claim.  ***Brown,*** 520 U.S. at 405.

As the weight of case law from other circuits, and the paucity of authority in the 10th Circuit demonstrates, Mr. Ragsdell cannot maintain a claim for violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983, while simultaneously exercising available statutory remedies under the same operative facts.  Therefore, even if Ms. Lopez's actions could be found to be egregious enough to violate some Federal disability law, Ms. Lopez's actions could not form the basis of a lawsuit alleging a violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to §1983.

## B.    Inextricably Intertwined

### (1)  Standard of Review

Exercise of pendent jurisdiction in accordance with *City of Wynnewood,* 57 F.3d at 930, is discretionary and places the appellate court in the shoes of the reviewing court with respect to coterminous claims and issues.  As such, the same *de novo* standard of review should apply.

### (2)  Resolution of qualified immunity in favor of Ms. Lopez necessarily resolves all remaining claims.

This Court can also consider RHA's motion for summary judgment given the inextricably intertwined relationship between RHA's potential liability and the liability of Ms. Lopez.  *City of Wynnewood*, 57 F.3d at 930 (holding that pendent appellate jurisdiction is appropriate when "resolution of the collateral appeal *necessarily* resolves the pendent claim as well.") (emphasis in original).

A party suing a governmental entity for the actions of its employee must demonstrate: (1) the municipal employee committed a constitutional violation, and (2) a policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  In this case, because Ms. Lopez did not violate Mr. Ragsdell's right to equal protection under the laws, the RHA is necessarily entitled to judgment as a matter of law as well.

The RHA is a very small government entity, consisting of only four employees.  As asserted by Mr. Ragsdell, Ms. Lopez is a policymaker for purposes

of municipal liability.  Given that Mr. Ragsdell does not cite an actual policy that led to his alleged constitutional deprivation, his claim against RHA must rest alone on an action taken by Ms. Lopez in her capacity as the director of the RHA. Therefore, a resolution clearing Ms. Lopez of any constitutional violations will also dissolve any liability on behalf of the RHA.  Pendent jurisdiction is therefore appropriate because the issues raised in RHA's appeal are "no broader than those in [Lopez'] permissible collateral appeal . . ." *City of Wynnewood*, 57 F.3d at 930.

Mr. Ragsdell has asserted a claim under CADA against the RHA.  To be liable under CADA an entity that has been sued must be the aggrieved party's "employer."  *Hedva Bank v. Allied Jewish Federation of Colo.*, Civ. No. 12-cv-03274-LTB-KLM, 2013WL 6489997, at *2 (D. Colo. Dec. 10, 2013).  Though the 10th Circuit has not specifically addressed the issue, it is generally held that the CADA's use of the term "employer" precludes CADA claims against supervisors or managers. *Id.*  Nonetheless, as in the *City of Wynnewood* case, where the state law claim is coterminous with the Federal claim, disposition of the Federal claim disposes of the state claim.  57 F.3d at 930.  CADA, the Rehabilitation Act, and the ADA all provide for the same rights, and CADA looks to Federal law in that regard.  *Fleites v. Pueblo Med. Investors*, Civ. No. 07-cv-02658-REB-MJW, 2008WL4371924, at *1 (D. Colo., Sept. 22, 2008) ("The ADA and the CADA are, essentially, parallel statutory schemes that address disability discrimination.").

Therefore, the conclusion that: (1) there is no violation of the Rehabilitation Act, as found by the District Court; and (2) no §1983 claim can be made in lieu of a claim under the Rehabilitation Act, bars any continuing claim under CADA as a matter of law.

## VII.  CONCLUSION

For the reasons stated above, Ms. Lopez is entitled to an immediate resolution of her qualified immunity defense in her favor because Mr. Ragsdell has failed to satisfy the heavy two-part test required to overcome the defense.  The record and the District Court's findings of fact make it clear that Ms. Lopez's actions were not discriminatory, nor could they form a claim under 42 U.S.C. §1983.  Further, there was no "clearly established" law which could form the basis of liability for Ms. Lopez's alleged actions.

Also, because of the size of the RHA, Ms. Lopez's role within the RHA, and based on Mr. Ragsdell's claims and allegations, resolution of the issue of qualified immunity in favor of Ms. Lopez on prong one of the qualified immunity test necessarily absolves the RHA of liability for the remaining claims against it.

Finally, while the RHA and Ms. Lopez assert that the argument and factual citations above render the District Court's denial of qualified immunity ripe for review on both prongs, the Court is also empowered with the option to reverse and remand to the District Court for a clearer decision on the issue of qualified

33

immunity. Therefore, in the alternative, the RHA and Ms. Lopez request an Order reversing and remanding the Order denying Summary Judgment on qualified immunity and for a determination of that issue by the District Court.

## STATEMENT AS TO ORAL ARGUMENT

Oral argument is requested because of qualified immunity issues, including whether the law was clearly established and whether, even assuming Mr. Ragsdell has the right to make an Equal Protection claim under § 1983, no such claim exists under the undisputed facts of this case.

s/ J. Andrew Nathan
J. Andrew Nathan
Timothy R. Fiene
Nathan, Bremer, Dumm & Myers, P.C.
7900 East Union Avenue, Suite 600
Denver, Colorado 80237
Tel: (303) 691-3737
anathan@nbdmlaw.com
tfiene@nbdmlaw.com
*Attorneys for Defendants/Appellants*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> [ ] this brief contains 8,396 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in font 14, Times New Roman.

Date: May 8, 2014

*s/ J. Andrew Nathan*

J. Andrew Nathan
Timothy R. Fiene
Attorneys for Appellants
Nathan, Bremer, Dumm & Myers, P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237
Tel: (303) 691-3737
anathan@nbdmlaw.com
tfiene@nbdmlaw.com

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TrendMicro Worry Free Business Security Agent version 7.0.1638, and according to the program are free of viruses.

_s/ J. Andrew Nathan_____
J. Andrew Nathan
Timothy R. Fiene

36

# CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2014, I electronically filed the foregoing **OPENING BRIEF ON APPEAL** using the court's CM/ECF system which will send notification of such filing to the following and hand delivered seven (7) hard copies to the court within two (2) business days:

Darold W. Killmer, Esq.
Darren M. Jankord, Esq.
KILLMER, LANE & NEWMAN, LLP
DKillmer@kln-law.com
djankord@kln-law.com
*Attorneys for Appellee*

Laurie Rust, Esq.
Byeongsook Seo, Esq.
Gordon & Rees, LLP
lrust@gordonrees.com
bseo@gordonrees.com
*Attorneys for Defendant La Plata Homes Fund, Inc.*

*s/ J. Andrew Nathan*
J. Andrew Nathan
Timothy R. Fiene
Attorneys for Appellants
Nathan, Bremer, Dumm & Myers, P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237
Tel: (303) 691-3737
anathan@nbdmlaw.com
tfiene@nbdmlaw.com