CASE NO. 14-1104

# In the United States Court of Appeals
# For the Tenth Circuit

_____

**KENNETH JASON RAGSDELL**,

*Plaintiff-Appellee,*

v.

**REGIONAL HOUSING ALLIANCE OF LA PLATA COUNTY AND JENNIFER LOPEZ**,

*Defendants-Appellants,*

_____

**BRIEF OF PLAINTIFF-APPELLEE**
_____

**Appeal from the United States District Court for the District of Colorado**
The Honorable Judge John L. Kane
Civil Action No. 12-CV-00967-JLK

_____

DAROLD W. KILLMER
DARREN M. JANKORD
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000

*Attorneys for Plaintiff-Appellee*

_____

**ORAL ARGUMENT IS REQUESTED**

_____

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................iv

STATEMENT OF RELATED CASES ........................................................ viii

I. JURISDCTIONAL STATEMENT .................................................................1

   A. District Court Court-Matter Jurisdiction and Timeliness of Appeal...........1

   B. Basis for Jurisdiction of the 10th Circuit Court of Appeals ........................1

II. STATEMENT OF CASE ...............................................................................4

III. STATEMENT OF THE FACTS ....................................................................5

   A. Mr. Ragsdell was Qualified for his Job at RHA and Excelled in the
      Position before Defendant Lopez became his Supervisor..........................5

   B. Ms. Lopez's Discriminatory Treatment of Mr. Ragsdell ...........................9

   C. Ms. Lopez's History of Discriminating against
      Employees with Disabilities ....................................................................15

IV. SUMMARY OF THE ARGUMENT ...........................................................16

V. ARGUMENT .................................................................................................18

   A. The District Court Properly Denied Summary Judgment on
      Mr. Ragsdell's 14th Amendment Claim as Ms. Lopez is
      not entitled to Qualified Immunity .....................................................18

      1. Disputed Facts Preclude a Finding that no Constitutional
         Violation Occurred because Ms. Lopez, without a rational
         Basis, discrimination against Mr. Ragsdell.....................................19

         a. Mr. Ragsdell Established his 14th Amendment
            Claim under the *McDonnell-Douglas* Framework ...............19

      i.    Mr. Ragsdell Established his *Prima Facie* Case ........19

      ii.   Mr. Ragsdell was Qualified for his Position,
          With or Without Reasonable Accommodation ..........20

      iii.  Defendant Lopez and RHA Discriminated
          Against Mr. Ragsdell Because of His Disability........23

    b.  The Stated Reasons for Defendants' Treatment of
       Mr. Ragsdell are Mere Pretext for Discrimination ...............25

    c.  Mr. Ragsdell Can Establish That No Rational Basis
       Existed for Defendants' Discrimination, and thus His
       Equal Protection Claim Survives Summary Judgment.........32

  2.  Mr. Ragsdell's Right to be Free From Discrimination on the
      Basis of His Disability Is Clearly Established .................34

    a.  Whether the ADA Preempts Discrimination Claims
       Brought Under the 14th Amendment is Not Relevant
       to the Discussion of Qualified Immunity and Has Not
       Been Raised Until This Appeal................................................39

      i.    Defendant-Appellants Waived Their Preemption
          Argument and it Cannot be Heard by This Court ......40

      ii.   The ADA Does Not Preempt the 14th
          Amendment because Mr. Ragsdell is not
          Pursuing an ADA Claim..............................................41

B.  Mr. Ragsdell's CADA Claim Against RHA Is Not Inextricably
    Intertwined to his 14th Amendment Claim Against Ms. Lopez
    And is Not Part of This Appeal ............................................................44

  1.  CADA Provides No Qualified Immunity Defense ...................45

  2.  The Rehabilitation Act Has Different, Stricter
      Requirements Than CADA ........................................................45

CONCLUSION ...................................................47

STATEMENT REGARDING ORAL ARGUMENT ..........................................47

CERTIFICATE OF COMPLIANCE....................................................................48

CERTIFICATE OF SERVICE ............................................................................49

CERTIFICATE OF DIGITAL SUBMISSION ....................................................50

# TABLE OF AUTHORITIES

CASES                                                                          Page

*Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999) ..................................43

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................35, 39

*Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997)......................................30

*Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002) ..............................................1, 44

*Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*
  41 F.3d 600 (10th Cir. 1994) ................................................................................40

*Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ............................32

*Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003)..................................................37

*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996).............40

*Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275 (10th Cir. 2003) ...........................19

*Carlile v. S. Routt Sch. Dist.*, 739 F.2d 1496 (10th Cir. 1984)................................20

*Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*
  483 F.3d 1025 (10th Cir. 2007) .......................................................................33, 41

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)......................*passim*

*Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373 (10th Cir. 1994)....................................26

*Colten v. Kentucky*, 407 U.S. 104 (1972) ................................................................36

*Copelin-Brown v. N.M. State Personnel Office*
  399 F.3d 1248 (10th Cir. 2005) .......................................................................*passim*

*Danville v. Reg'l Lab Corp.*, 292 F.3d 1246 (10th Cir. 2002) ................................25

*DirecTV, Inc. v. Barrett*, 311 F. Supp. 2d 1143 (D. Kan. 2004) ............................40

iv

*Dixon v. Kirkpatrick*, 553 F.3d 1294 (10th Cir. 2009) ................................................2

*Elmore v. Capstan, Inc.,* 58 F.3d 525 (10th Cir. 1995) ...........................................46

*Flitton v. Primary Residential Mortg., Inc.*
  238 F. App'x 410 (10th Cir. 2007) ..........................................................................46

*Fuerschbach v. Southwest Airlines Co*., 439 F.3d 1197 (10th Cir. 2006)...............36

*Garrett v. Hewlett-Packard Co*., 305 F.3d 1210 (10th Cir. 2002) ........26, 29, 32, 34

*Gates v. Rowland,* 39 F.3d 1439 (9th Cir. 1994).....................................................45

*Green v. Post*, 574 F.3d 1294 (10th Cir. 2009) .......................................................18

*Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303 (10th Cir. 2005) .................26, 30

*Johnson v. Jones*, 515 U.S. 304 (1995) ................................................................1, 2

*Johnson v. Weld County*, 594 F.3d 1202 (10th Cir. 2010) ......................................20

*Jones v. Hunt*, 410 F.3d 1221 (10th Cir. 2005)........................................................36

*Jones v. Okla. City Pub. Sch*, 617 F.3d 1273 (10th Cir. 2010)...............................26

*Jordan v. Clayton Brokerage Co. of St. Louis, Inc.*
  975 F.2d 539 (8th Cir. 1992) ..................................................................................40

*Keller v. Bd. Of Educ. Of City of Albuquerque, N.M.*
  182 F. Supp. 2d 1160 ........................................................................................42, 43

*Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012) ....................................................37

*Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010) ........................................................2

*Marx v. Schnuck Mkts.*, 76 F.3d 324 (10th Cir. 1996).............................................26

*Mascorro v. Billings*, 656 F.3d 1198 (10th Cir. 2011) ..............................................2

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973) .......................................*passim*

*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304 (10th Cir. 2006) ..................24

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................................1

*Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995) ..................................44

*Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir. 1997) ...........................................43

*Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992) ...............................43

*Orr v. City of Albuquerque*, 417 F.3d 1144 (10th Cir. 2005)..................................32

*Owen v. City of Independence*, 445 U.S. 622 (1980) ...............................................45

*Palmer v. Bd. of Comm'rs*, 441 F. App'x 582 (10th Cir. 2011) ................................3

*Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992)...........................................35, 38

*Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005).....................................................20

*Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*
  11 F.3d 1567 (10th Cir. 1993) .............................................................................41

*Ramirez v. Department of Corrections* 222 F.3d 1238 (10th Cir. 2000)...........37, 39

*Reynolds v. Powell*, 370 F.3d 1028 (10th Cir. 2004)...............................................18

*Reynolds v. Quarter Circle Ranch, Inc.*
  280 F. Supp. 2d 1235 (D. Colo. 2003)..................................................................30

*Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108 (10th Cir. 2007) ............................30

*St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742 (1993)........................................26

*Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003)......................................40

*Scott v. Harris*, 127 S. Ct. 1769 (2007) ................................................................36

*Shrum v. City of Coweta*, 449 F.3d 1132 (10th Cir. 2006) ........................................1

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) ...............................23

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) ......................................................35

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..................................................20

*Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008) ...........................................26

*United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) ...............................38

*United States v. Lanier*, 520 U.S. 259 (1997).........................................................35

*Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205 (10th Cir. 2003) ...........................25

*White v. York Int'l Corp.*, 45 F.3d 357 (10th Cir. 1995)....................................20, 22

*Wilson v. Layne*, 526 U.S. 603 (1999) .....................................................................35

*Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444 (1st Cir. 1995)....................40

*Zasada v. City of Englewood*, No. 11-cv-02834-MSK-MJW,
  2013 U.S. Dist. LEXIS 45550 (D. Colo. Mar. 29, 2013) ......................................37

STATUTES

U.S. Const. amend. XIV .........................................................................................41

29 U.S.C. § 794(a) .................................................................................................45

42 U.S.C. § 12112(a) .............................................................................................43

29 C.F.R. § 1630.2, *et seq.*....................................................................................22

C.R.S. § 24-34-301, *et seq.* (CADA) .....................................................................19

RULES

Fed. R. Civ. P. 8(c)................................................................................................40

## <u>STATEMENT OF RELATED CASES</u>

There are no prior or related appeals in this matter.

# I.   JURISDICTIONAL STATEMENT

## A. District Court Court-Matter Jurisdiction and Timeliness of Appeal

Plaintiff-Appellee agrees with Defendant-Appellants' Jurisdictional Statement with respect to the district court's jurisdiction and this appeal's timeliness.

## B. Basis for Jurisdiction of the 10th Circuit Court of Appeals

Because the district court's denial of qualified immunity to Ms. Lopez was based upon the multitude of remaining disputed facts, rather than on a matter of law, this Court lacks jurisdiction over this appeal.

"The denial of a summary judgment motion ordinarily is not an appealable final order." *Bass v. Richards*, 308 F.3d 1081, 1086 (10th Cir. 2002).  Even in a qualified immunity case, a district court's determination that the record raises a "genuine issue of material fact," precluding summary judgment in favor of the defendants, is not appealable.  *Johnson v. Jones*, 515 U.S. 304, 313 (1995).   When a party has been denied qualified immunity, that denial can be appealed prior to a final judgment only to the extent that the appeal is based on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530, (1985); *see also Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir. 2006) (orders denying qualified immunity before trial are appealable only if they involve "abstract issues of law").

The "abstract issues of law" that this Court may determine are whether the factual findings of the district court sufficiently demonstrate a violation of law and whether that law was clearly established at the time of the alleged violation. *Johnson*, 515 U.S. at 317. "It is not the job of the appellate court to determine whether the record supports the district court's factual assumptions." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009). "[I]f a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true -- and do so even if our own de novo review of the record might suggest otherwise as a matter of law." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010); *See also Dixon*, 553 F.3d at 1301 n.3 ("The Appellant is therefore incorrect to state that we must 'conduct a de novo review of the record' to determine whether there were disputed issues of material fact."); *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011) ("The district court properly determined issues of material fact were present with respect to these claims. We lack jurisdiction to review them.").

The only time an appellate court can "look behind [an] order denying summary judgment" and conduct a de novo review of the record is if (1) "the district court fails to identify the particular charged conduct that it deemed adequately supported by the record" and "when the 'version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record."

*Palmer v. Bd. of Comm'rs*, 441 F. App'x 582, 584 (10th Cir. 2011) (internal quotations and citations omitted).

Judge Kane ruled that "Mr. Ragsdell's First (denial of equal protection under the Fourteenth Amendment) and Third (violation of the Colorado Anti-Discrimination Act) Claims are unsuitable for summary judgment as to Defendants Lopez and the RHA" because he found "genuine disputes of material fact that preclude summary judgment." Aplt. App. 1028. Judge Kane cited to "one (**of many**) examples" finding that there was clearly conflicting testimony, and therefore viewed in the light most favorable to Mr. Ragsdell, regarding "whether Mr. Ragsdell received appropriate accommodation in physically moving paper files." *Id*. (emphasis added).

Judge Kane cited to specific conduct, which if proven, would violate clearly established law: failing to make reasonable accommodations to Mr. Ragsdell, a person with a disability. The "conflicting testimony" as Judge Kane found in the record demonstrates that a jury could side with Mr. Ragsdell. Accordingly, the two exceptions to conduct a de novo review of the record are not met and the Court is left with "one straightforward legal question:" could a jury find that Ms. Lopez's refusal to make reasonable accommodations to Mr. Ragsdell violate clearly established law – the answer to which must be yes.

## II.  <u>STATEMENT OF THE CASE</u>

Kenneth Jason Ragsdell was successfully employed at the Regional Housing Alliance ("RHA"), a Durango-based housing agency, beginning in February 2010. Days after a successful one-year performance review and 10% raise, Mr. Ragsdell informed his supervisor, RHA Executive Director Defendant Jennifer Lopez, that he would require more frequent medical visits to Denver to treat his multiple sclerosis.  From that moment on, Defendant Lopez began to increase Mr. Ragsdell's workload, set unreasonable and contradictory expectations and deadlines, and barrage him with criticisms.  By late April 2011, Defendant Lopez's scrutiny of Mr. Ragsdell had become nonstop, and her latest order was for Mr. Ragsdell—who walked with a cane—to physically move the RHA's entire file set between offices.  When he (predictably) encountered difficulty in doing so, she refused him assistance, demanding over weeks that he do it alone, and eventually sent him, not just one, but three disciplinary memoranda at 8 p.m. on April 25, 2011.  Mr. Ragsdell recognized this behavior: he had seen Defendant Lopez employ it against his former co-worker Tracy Akers, who the previous summer had been diagnosed with Crohn's Disease and thereafter suffered the same treatment from Defendant Lopez up until Ms. Lopez succeeded in terminating her employment.  Having observed Ms. Akers' situation, Mr. Ragsdell knew that Defendant Lopez would terminate his employment, and reasonably believed that

he was left with no other choice but to resign.  As fully described herein, Mr.

Ragsdell seeks, and has met his burden to earn, the right to present to a jury his

claim that his employer discriminated against him on the basis of his disability,

denying him equal protection under the Fourteenth Amendment and violating the

Colorado Anti-Discrimination Act.

### III.    <u>STATEMENT OF THE FACTS</u>

**A.  Mr. Ragsdell was Qualified for his Job at RHA and Excelled in the
Position before Defendant Lopez became his Supervisor**

Mr. Ragsdell is a La Plata County native with over a decade of

administrative experience, including two years of low-income housing experience,

in government and the private sector.  Mr. Ragsdell was hired as the Client

Services Advisor for RHA in February 2010.  Aplt. App. 20 ¶¶ 9-10.

In 2004, Mr. Ragsdell was diagnosed with multiple sclerosis, a chronic,

progressive autoimmune disease, which affects the brain and spinal cord and which

has no known cure.  As a result of his multiple sclerosis, Mr. Ragsdell is

substantially limited in one or more major life activities, including but not limited

to walking and performing manual tasks such as lifting.  He is also limited in life

activities requiring physical strength and endurance, which cause full-body fatigue,

including but not limited to incontinence, spasticity in his legs and foot-drop that

each increase the likelihood of falls, and decreased manual dexterity and gripping

ability in his arms and hands.  *Id.* ¶ 11.

Mr. Ragsdell "loved the job at the RHA."  Aplt. App. 614, Ragsdell Dep.,
Vol. I, 198:10. He was "a good public face for the agency" who "was enthusiastic
about the agency and spoke highly of it and got the word out about the work" and
excelled at client interactions. Aplt. App. 427-428¶ ¶ 1; Aplt. App. 479, Lopez
Dep. 97:8-98:18.  Ms. Lopez perceived that Mr. Ragsdell considered his job at
RHA to be a long-term position.  Aplt. App. 428 ¶ 2; Aplt. App. 484, Lopez Dep.
131:4-6.

At the time he was hired, RHA was aware that Mr. Ragsdell had multiple
sclerosis.  Mr. Ragsdell diligently performed his job duties as Client Services
Advisor for RHA, often working throughout evenings and weekends.  Colleagues
repeatedly commended Mr. Ragsdell on his ability to work well with clients, and
the local newspaper ran multiple articles in which clients expressed their
appreciation for Mr. Ragsdell's assistance in preparing them for homeownership.
Aplt. App. 21¶ ¶ 13-14.  RHA's workload fluctuates; over Mr. Ragsdell's tenure, it
increased.  When Mr. Ragsdell was hired in 2010, the workload was at a low point,
but by the first half of 2011, his last months on the job, the workload had greatly
increased.  *Id.* ¶ 3.

Due to staffing shortages and limitations, the volume of work required of
Mr. Ragsdell often exceeded the time available to complete all of it.  Throughout
his tenure, Mr. Ragsdell was repeatedly told to prioritize client needs over

paperwork and administrative work.  It was common throughout his tenure for

client services to take priority over internal administrative matters.  *Id. ¶* 15.

Mr. Ragsdell received a six-month performance review in August 2010.

Aplt. App. 644-648.  His supervisor at the time, Julie Levy, recognized him for his

"strong work ethic, ability to learn new tasks quickly and a passion for his job."

*Id.*  She noted the "steep learning curve" of his position and praised his initiative to

come into work early or stay late to ensure he accomplished his assigned tasks.  *Id.*

The review documented that his "primary role [wa]s to work individually with

clients."  *Id.*  In the review, both Mr. Ragsdell and Ms. Levy documented Mr.

Ragsdell's heavy workload, especially with regard to paperwork duties.  Ms. Levy

agreed to lessen the load and wrote, "[i]n the next six months we will work to

reduce the paper load and physical client files in an effort to reduce any

redundancies."  *Id.*  The review also noted Mr. Ragsdell's request for a new printer

and scanner.  At that time, the printer was not collating correctly and Mr. Ragsdell

needed a scanner to scan clients' financial information.  In response to this request

for better equipment, a new printer and scanner was purchased.  It was placed in

Mr. Ragsdell's office, in part to decrease the distance he had to walk to use it. Aplt.

App. 21 ¶¶ 16-18.

In February 2011, Mr. Ragsdell received his one-year review, again from

Ms. Levy.  Aplt. App. 674-685.  The review again praised Mr. Ragsdell for his

strong work ethic and passion. The review reiterated that Mr. Ragsdell's "primary role [wa]s to work individually with clients" and that his "highest priority in the last six months has been to underwrite client files and get loan commitments closed." *Id.* In recognition of his good performance and RHA's confidence in him, Mr. Ragsdell was granted additional responsibilities (which he had proactively requested) and a significant salary raise. Aplt. App. 727. He was also promised a further salary raise in six months. In February 2011, Ms. Levy, who supervised Mr. Ragsdell since his hire, took a job in the private sector. Jennifer Lopez, Executive Director for RHA, became Mr. Ragsdell's direct supervisor. Aplt. App. 22 ¶¶ 20-22.

In early February 2011, Mr. Ragsdell notified Ms. Lopez, that due to his disability, multiple sclerosis, he would have to start seeing his medical provider located in the Denver, Colorado area (a seven-hour drive from Durango), on a more regular basis. Specifically, Mr. Ragsdell would be required to visit Denver once every three months. Ms. Lopez expressed immediate frustration at the prospect of accommodating this medical need, and the terms and conditions of Mr. Ragsdell's employment immediately changed. Despite his excellent performance up until that time, Mr. Ragsdell became singled out for discriminatory treatment by Ms. Lopez upon and following his notification and request for accommodation. Ms. Lopez promptly began to criticize Mr. Ragsdell's performance, and her

instructions were often contradictory and unreasonably physically demanding.

Aplt. App.  22-23 ¶¶ 23-24.

### B.  Ms. Lopez's Discriminatory Treatment of Mr. Ragsdell

After Mr. Ragsdell informed Defendant Lopez and RHA that he would need

to make additional medical trips to Denver for treatments of his M.S., Defendant

Lopez determined to increase her scrutiny of Mr. Ragsdell, and as described in

Aplt. App. 428-430, she did so in at least three ways:

a.      Harassing Mr. Ragsdell about his sick leave and medical

needs.  Aplt. App. 608-609, Ragsdell Dep., Vol. I, 162:20-164:25;

734; 735; 743; 752.  The harassment continued even after Mr.

Ragsdell's discharge, when Defendant Lopez initially denied Mr.

Ragsdell four hours of sick leave on his final day, making a note that

he had "no sick available" and that his timesheet was "inaccurate."

Both of these assertions were incorrect.  Aplt. App.  511, Lopez Dep.

254:3-23.

b.      Decreeing repeated orders to Mr. Ragsdell to clean his

office, working on the weekends to do so if necessary.  Aplt. App.

736, 743, 749, 761.  These decrees came alongside Ms. Lopez's

demand that Mr. Ragsdell reorganize the files in a way different than

they were previously.   Aplt. App. 706-707, Ragsdell Dep., Vol. II,

31:11-33:9.

      c.    Sending Mr. Ragsdell weekly emails dictating lengthy,

and shifting, priorities for the week.  Aplt. App. 507-508, Lopez Dep.

236:10-237:20; 734; 736; 749.

From the time Mr. Ragsdell notified her of his need for reasonable medical

accommodation, Ms. Lopez began to frequently question Mr. Ragsdell's

accumulated paid leave time in a harassing manner.  She did so during the initial

notification conversation and on numerous occasions following it.  Each time, she

incorrectly assumed that Mr. Ragsdell had exhausted his paid leave time.  She also

demanded he work evenings and weekends. Aplt. App. 23 ¶ 26; 608-609, Ragsdell

Dep., Vol. I, 162:20-164:25; 737-742.

Ms. Lopez treated Mr. Ragsdell unlawfully in spite of the fact that he

carefully planned any absences from the office.  For instance, on his next

scheduled medical visit, in early March 2011, Mr. Ragsdell combined a dental

appointment with his medical visit.  To avoid taking an additional day away from

work, Mr. Ragsdell had mandatory dental surgery on the morning of his drive to

Denver and completed the seven-hour drive in terrible pain.  Following the

surgery, Ms. Lopez continued to harass Mr. Ragsdell and refused to permit him to

fully participate in his employer's FLEX spending program (which would have

helped him to pay for his dental surgery).  Her refusal gave Mr. Ragsdell further

reason to worry that Ms. Lopez was placing his job in jeopardy.  Aplt. App. 24 ¶¶

30-31; 740-741.

     In late March or early April 2011, Ms. Lopez directed that Mr. Ragsdell

would switch offices.  Well aware that Mr. Ragsdell's multiple sclerosis hindered

his ability to move and lift physical objects, Ms. Lopez nevertheless demanded that

Mr. Ragsdell move heavy furniture and three-years-worth of client files from one

office to another.  Mr. Ragsdell, who walks with a cane, immediately and

repeatedly told Ms. Lopez that he was unable to accomplish the heavy manual

labor with which she had tasked him.  Ms. Lopez refused to believe him and

refused to accommodate him, despite the fact that she had recruited her husband

and the temporary employee to assist her with the move.  When she saw Mr.

Ragsdell seated in the lobby while those two were moving furniture, Ms. Lopez

asked Mr. Ragsdell, in a sarcastic tone, "What are you doing, just 'chillaxin'?"

Aplt. App. 24-25 ¶¶ 32-33; 741-742.

     In fear of losing his job, Mr. Ragsdell attempted to move the files,

employing a rolling chair to assist him.  The cart was of no use, as he still would

have had to bend and lift the files had he used it.  Midway through the move, Ms.

Lopez again changed her demands of Mr. Ragsdell and informed him that, in

addition to wanting the files physically moved, she wanted their contents re-sorted.

To accomplish this latest request, Mr. Ragsdell placed some files on the floor of his office while they awaited re-filing. The files remained on the floor while Mr. Ragsdell attended to his heavy workload and prioritized client services, as he had always done and been repeatedly instructed to do. In spite of the fact that Mr. Ragsdell had always been told to prioritize client services, Ms. Lopez demanded of Mr. Ragsdell over and over again when the files would be placed in a file cabinet. Mr. Ragsdell responded that he was having physical difficulty completing the move, and that he had been attending to client services before doing so, and again asked Ms. Lopez for assistance. Aplt. App. 25 ¶¶ 25-38.

Ms. Lopez again denied Mr. Ragsdell's request for assistance in physically moving files. Aplt. App. 748. Her repeated harassment of Mr. Ragsdell and her refusal to acknowledge and accommodate the physical restrictions created by his multiple sclerosis, significantly increased the stress upon Mr. Ragsdell, which in turn exacerbated his declining physical condition. Mr. Ragsdell, still in fear of losing his job and in considerable stress under the unrelenting scrutiny and harassment of his supervisor, sorted the files. Aplt. App. 584-585, 590, 603, Ragsdell Dep., Vol. I, 43:17-44:11, 64:12-65:8, 133:13-19; Aplt. App. 703,705-707, Ragsdell Dep. Vol. II, 19:6-14, 27:15-28:12, 29:16-30:4, 32:13-14. By the end of the work day on April 25, 2011, the only task remaining was to lift the files from the floor to the filing cabinet, a task that Mr. Ragsdell planned to ask the

12

temporary employee to complete the next work day.  Mr. Ragsdell did not have

that chance.  After work hours on April 25, 2011, Ms. Lopez sent Mr. Ragsdell two

memoranda via email.  Ms. Lopez ordered him "to have [his] office in immaculate

condition" by the start of the workday on April 27, 2011.  The memoranda

included still-another restatement of his job duties, still-another barrage of

criticism for job deficiencies such as a disorderly office, and were characterized as

the "final warning" for his allegedly poor performance. Aplt. App. 26 ¶¶ 39-42;

750-752.  All of this only two months after having requested accommodation for

his disability, shortly after having received an excellent performance evaluation

and a significant raise in pay. Aplt. App. 727; 739.

　　　The physical demands being placed upon him, coupled with the refusal to

accommodate his disability, in conjunction with the severe and/or pervasive

harassment that adversely altered the terms and conditions of his employment,

made his resignation the only available choice.  On April 27, 2011, left with no

other way to halt RHA's illegal discrimination and to preserve his job record, Mr.

Ragsdell resigned as Client Services Advisor. Aplt. App. 26 ¶¶ 44-45; 578-584,

Ragsdell Dep., Vol. I, 17:3-42:7.

　　　During his tenure with RHA, Mr. Ragsdell did not abuse the sick leave

policy or the vacation leave policy.  Aplt. App. 501-502, Lopez Dep. 212:14-16,

213:6-8.  In fact, Mr. Ragsdell worked to minimize absences by scheduling a

necessary dental surgery on the morning of one of his travel days to an appointments in Denver, having surgery that morning and completing the approximately seven-hour drive in terrible pain.  Aplt. App. 740.  Additionally, Mr. Ragsdell never violated any RHA company policy and no business disruption ever occurred because of Mr. Ragsdell's alleged deficiencies. Aplt. App. 480, 502, Lopez Dep. 102:3-18, 213:9-11; 633-634, Levy Dep. 93:21-97:2.

Reasonable accommodations for Mr. Ragsdell would have included periods of rest and scheduling of duties so as to avoid prolonged ambulation.  Aplt. App. 431 ¶ 8; 722, 724, Vollmer Dep. 51:16-25, 66:25-67:7; 765-770, Expert Report of Dr. Allen C. Bowling.  Reasonable accommodation would also have allowed Mr. Ragsdell to make his quarterly trips to Denver to receive treatment for his M.S. without causing a material negative impact on his work performance or productivity. *Id.*

Revealing Defendant Lopez's perceptions concerning Mr. Ragsdell's disability, after his departure, Defendant Lopez wrote a "Personnel Memorandum" in which she commended herself for "never comment[ing] on his excessive bathroom breaks or Dr's appointments."  Aplt. App. 764.  Notably, however, even after Mr. Ragsdell left, Ms. Lopez continued to question Mr. Ragsdell's leave accruals.  She initially denied his final time card and recomputed his leave

14

accruals, but eventually acknowledged that Mr. Ragsdell had correctly computed his final leave accrual. Aplt. App. 27 ¶ 47; 756-760.

### C.  Ms. Lopez's History of Discriminating against Employees with Disabilities

As described in Aplt. App. 431-436 ¶ 10, Mr. Ragsdell identified an eerily similarly situated employee, Tracy Akers, a disabled former employee who required the reasonable accommodation of time off to attend medical appointments who was similarly mistreated and discriminated against by Ms. Lopez. Aplt. App. 655, 660, Akers Dep. 12:4-9, 13:12-14:3, 41:7-8; 610, Ragsdell Dep., Vol. I, 169:6-8; 499-501, Lopez Dep. 204:7-212:6.

In late May 2010, Ms. Akers informed Defendant Lopez of her diagnosis with Crohn's Disease and requested the reasonable accommodations of (1) rearranging the sequencing and timing of deadlines, and (2) for sharing of physical duties such as vacuuming at the office.  The very next day after she reported her diagnosis, Defendant Lopez questioned Ms. Akers' leave amounts, in spite of the fact that Ms. Akers had at least ten days of leave time available.  Just as she later did to Mr. Ragsdell, Ms. Lopez began sending Ms. Akers "reminder" and "check-in" emails demanding updates on open tasks.  Aplt. App. 661, 667, Akers Dep. 46:12-19, 69:13-24.  Additionally, just as she would later do to Mr. Ragsdell, Ms. Lopez also began increasing Ms. Akers' workload.  Aplt. App. 655, 659, 661, 663, Akers Dep. 13:12-14:13, 36:17-22, 45:1-8, 54:11-55:15.

Like Mr. Ragsdell, Ms. Akers testified that she never exhausted her sick or vacation leave, but felt criticized for her use of sick leave.  Aplt. App. 656, 663, 667, 672, Akers Dep. 18:1-18, 52:17-53:7,  68:24-69:5, 111:23-25.  Additionally, Defendant Lopez refused Ms. Akers' requests for assistance with physically demanding housekeeping tasks.  *Id.* at 663, 54:11-55:15.  Tracy Akers received Defendant Lopez's message loud and clear: as Ms. Akers later testified, "Jen [Lopez] made it very clear to me that the goal was to end my employment." *Id.* at 660, 42:12-13.  Defendant Lopez accomplished her goal in Ms. Akers' case.  In August 2010, Defendant Lopez informed Ms. Akers that her full-time position would be terminated and replaced with a "different" part-time position, for which Ms. Akers would be over-qualified.  *Id.* at 665 60:10-61:9.  Even after that date, however, Defendant Lopez's harassment of Ms. Akers continued.

Tellingly, the job description for Ms. Akers' position did not change after the alleged "restructuring."  Before Ms. Akers even left, Ms. Lopez proposed to the RHA Board that the allegedly new position be hired at (i.e., increased back to) full-time.  Defendant Lopez hired a non-disabled employee, Linda Ward, into the position. *Id.* at 662, 664, 48:3-4, 56:17-59:8.

## IV.    <u>SUMMARY OF THE ARGUMENT</u>

The District Court properly denied summary judgment on Mr. Ragsdell's Fourteenth Amendment Claim against Ms. Lopez.  Mr. Ragsdell demonstrated that

Ms. Lopez cannot be qualifiedly immune from suit because she violated his clearly established Constitutional right to be free from irrationally disparate treatment based on his disability.  First, disputed facts preclude a finding that no Constitutional violation occurred because a reasonable trier fact could find that Ms. Lopez irrationally discriminated against Mr. Ragsdell on the basis of his disability. Second, Mr. Ragsdell's right to be free from discrimination and irrational and disparate treatment because of his disability is clearly established under the Fourteenth Amendment's Equal Protection Clause and Supreme Court and Tenth Circuit case law. Accordingly, the District Court's denial of summary judgment on Mr. Ragsdell's Fourteenth Amendment claim against Ms. Lopez and RHA should be affirmed.

Mr. Ragsdell's Colorado Anti-Discrimination Act claim against RHA is not reviewable on this appeal.  Mr. Ragsdell's CADA claim is not inextricably intertwined with Ms. Lopez's qualified immunity appeal as RHA cannot avail itself of a qualified immunity defense and the denial of Mr. Ragsdell's Rehabilitation Act claim, which has a stricter burden of proof, does not necessitate a denial of Mr. Ragsdell's CADA claim.  Accordingly, this Court should not review Mr. Ragsdell's CADA claim against RHA on appeal on the District Court's denial of summary judgment should be affirmed.

# V.    <u>ARGUMENT</u>

## A.    The District Court Properly Denied Summary Judgment on Mr. Ragsdell's 14th Amendment Claim as Ms. Lopez is not entitled to Qualified Immunity[1]

Judge Kane properly found that Mr. Ragsdell's Equal Protection Claim was unsuitable for summary judgment on the basis of genuine and disputed material facts. Aplt. Ann. 1028. This court should affirm Judge Kane's Order.

A defendant is not entitled to qualified immunity if disputed facts preclude a conclusion that no constitutional violation occurred, and if the law prohibiting the defendant's conduct was clearly established at the time the conduct occurred. *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). Because Mr. Ragsdell has met both prongs of this test, the district court's denial of summary judgment should be affirmed. Mr. Ragsdell has satisfied the first prong of the test by demonstrating that Defendant Lopez's violation of his constitutional right to equal protection by discriminating against him in his employment on the basis of his disability was without rational explanation. The second step: whether Mr. Ragsdell's right to equal protection was clearly established at the time of Defendant Lopez's conduct has also been satisfied by Mr. Ragsdell. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

---

[1] To be clear, Defendant Lopez's assertion of the defense of qualified immunity may only be made to Mr. Ragsdell's Equal Protection claim, and Mr. Ragsdell's CADA claim against RHA is not subject to qualified immunity and as discussed below, is not reviewable on appeal.

**1.     Disputed Facts Preclude a Finding that no Constitutional Violation Occurred because Ms. Lopez, without a rational basis, discriminated against Mr. Ragsdell**

Mr. Ragsdell's Fourteenth Amendment claim against Ms. Lopez rightfully survived summary judgment because he demonstrated that Ms. Lopez did discriminate against him on the basis of his disability, as analyzed under the *McDonnell-Douglas* framework, and he demonstrated that Ms. Lopez's discrimination against him was without a rational basis or excuse.

**a.     Mr. Ragsdell Established his 14th Amendment Claim under the *McDonnell-Douglas* Framework**

Mr. Ragsdell's claims of employment discrimination on the basis of his disability in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq*. (CADA) are evaluated using the *McDonnell Douglas* framework.  *See, e.g.*, *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1283 (10th Cir. 2003).  Mr. Ragsdell has satisfied his burden under each step of this framework and Mr. Ragsdell's remaining claims against Ms. Lopez and RHA should go to trial.

**i.     Mr. Ragsdell Established his *Prima Facie* Case**

To establish a prima facie case of disability discrimination, Mr. Ragsdell must show that: (1) he is a disabled person as defined under the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential

functions of the job held or desired; and (3) the employer discriminated against him because of his disability. *Johnson v. Weld County*, 594 F.3d 1202, 1217 (10th Cir. 2010). RHA and Ms. Lopez did not contest the first element, accordingly, Mr. Ragsdell must only establish the second and third elements.

"The precise requirements of a prima facie case [under *McDonnell Douglas*] can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted); *see also Carlile v. S. Routt Sch. Dist.*, 739 F.2d 1496, 1499 (10th Cir. 1984); *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

### ii.    Mr. Ragsdell was qualified for his position, with or without reasonable accommodation

A two-part analysis determines whether an individual is qualified to perform the essential functions of his job, with or without a reasonable accommodation. *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). First, the Court must ask whether the plaintiff could perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue. *Id.* "Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Id.* at 361-62.

20

At the time of hire, and at his six- and twelve-month evaluations, Mr. Ragsdell received satisfactory (indeed, excellent) performance reviews, on which both Defendant Lopez and Ms. Levy had input.  Aplt. App. 644-648, 674-685.  In those reviews, his supervisors confirmed that he was quickly learning his new job and on track to master it within a year.  *Id.*  Simultaneously, over the course of Mr. Ragsdell's first year, RHA's workload increased and institutional priorities categorized client-oriented tasks over filing.  Aplt. App. 476-477, Lopez Dep. 64:18-66:24.  Mr. Ragsdell was perfectly able to file as a general matter.  His limitation was in lifting the files, a task made necessary only by Defendant Lopez's decision that Mr. Ragsdell move offices, lift and move all of his files himself, and then reorganize the files once moved, all the while denying his requests for assistance.  Aplt. App. 584-585, 590, 603, Ragsdell Dep., Vol. I, 43:17-44:11, 64:12-65:8, 133:13-19; 703, 705-707, 713, Ragsdell Dep. Vol. II, 19:6-14, 27:15-28:12, 29:16-30:4, 32:13-14, 90:22-91:12.  Mr. Ragsdell did not suddenly become unqualified, in direct opposition to his reviews, in the months after he informed his supervisors of his need for increased medical visits.  Aplt. App. 632, Levy. Dep. 90:19-91:17; 644-648; 674-685.  Defendants' assertion that he did defies credulity, but at least creates a disputed issue of material fact precluding summary judgment.

Although moving client files during an office move could hardly be characterized as an "essential function" of Mr. Ragsdell's employment, even if

regarded as such, the facts demonstrate a triable issue of fact as to whether Mr.

Ragsdell could perform this "essential function" of his job *with* a reasonable

accommodation.  *See White*, 45 F.3d at 361-62.

Mr. Ragsdell did not request an accommodation of assistance with general

file maintenance, and he did not seek job restructuring.  What he requested was

assistance with the physical lifting of files during, and only during, the office

move, to prevent prolonged bouts of physical labor.  Aplt. App. 584-585, 590, 603,

Ragsdell Dep., Vol. I, 43:17-44:11, 64:12-65:8, 133:13-19; 703, 705-707, 713,

Ragsdell Dep. Vol. II, 19:6-14, 27:15-28:12, 29:16-30:4, 32:13-14, 90:22-91:12;

Aplt. App. 772, Vollmer Dep. 51:16-25; Aplt. App. 748.  Even if file maintenance

was an essential function of Mr. Ragsdell's job, physically moving files from one

office to the next was *not*.

Mr. Ragsdell's request for assistance with the office move was reasonable.

*See* 29 C.F.R. § 1630.2(o)(1)(ii) (defining reasonable accommodation to mean

"[m]odifications or adjustments to the work environment, or to the manner or

circumstances under which the position held or desired is customarily performed,

that enable an individual with a disability who is qualified to perform the essential

functions of that position."); *id.* § (o)(2)(ii) (listing among reasonable

accommodations "appropriate adjustment or modifications of examinations,

training materials, or policies . . . and other similar accommodations for individuals

with disabilities"). Simply permitting Mr. Ragsdell to reorder his duties, to permit periods of rest and limit the length of physical tasks, would not have required restructuring.

As Judge Kane ruled, there is "troubl[ing]" and "conflicting testimony regarding whether Mr. Ragsdell received appropriate accommodation in physically moving paper files." Aplt. App. 1028. Because material issues of fact remain as to whether Mr. Ragsdell was granted reasonable accommodations, summary judgment remains "premature" on this issue. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999).

### iii. Defendant Lopez and RHA discriminated against Mr. Ragsdell because of his disability

Regarding the last remaining element of his *prima facie* case, Mr. Ragsdell can demonstrate that Ms. Lopez and RHA discriminated against him because of his disability.

While Judge Kane ruled that Mr. Ragsdell was not constructively discharged, this does not dispose of Mr. Ragsdell's claims of disability discrimination. Ms. Lopez's failure to accommodate Mr. Ragsdell, treat him differently than non-disabled employees, and her relentless harassment of him is the subject of hotly disputed facts, and can form the basis of Mr. Ragsdell's remaining claims.

By April 27, 2011, beginning shortly after Mr. Ragsdell had notified his supervisor that his new treatment regimen for his multiple sclerosis would require more frequent medical trips from Durango to Denver, Mr. Ragsdell saw his previously good performance reviews immediately plummet over the course of increasingly severe, contradictory written and oral directives. Aplt. App. 507-508, Lopez Dep. 236:24-237:10; 608-609, Ragsdell Dep., Vol. I, 162:20-164:25; 706-707, Ragsdell Dep., Vol. II, 31:11-33:9; 736, 743, 749, 761. Defendant Lopez had forced Mr. Ragsdell to perform the physically demanding tasks of lifting and moving files, and verbally harassed him for his physical restrictions. *Id.* Her demeanor toward Mr. Ragsdell was always sarcastic, Appl. App. 605, and she had expressed concern that Mr. Ragsdell would not be working at RHA by the end of the year. Appl. App. 503. Meanwhile, Defendant Lopez provided non-disabled employees with more favorable treatment than Mr. Ragsdell, yet had terminated the employment of the only other disabled employee, Tracy Akers, in eerily similar fashion. Aplt. App. 655, 660, Akers Dep. 12:4-9, 13:12-14:3, 41:7-8; 610, Ragsdell Dep., Vol. I, 169:6-8; 499-501, Lopez Dep. 204:7-212:6.

Additionally, as fully discussed below, the demonstrably pretextual nature of Defendant-Appellants' purported reasons for its treatment of Mr. Ragsdell also supplies proof that Mr. Ragsdell was discriminated against because of his disability. *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1318 (10th

Cir. 2006) (citing *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1219 (10th Cir. 2003).

### b. The Stated Reasons for Defendants' Treatment of Mr. Ragsdell are Mere Pretext for Discrimination

Defendants' sole justification for their actions is that Plaintiff exhibited actual performance deficiencies wholly unrelated to his disability. Defendants assert that Defendant Lopez's communications in mid-February to April 2011 to Mr. Ragsdell are, on their face, neither discriminatory nor pretextual, and the fact that these performance criticisms began immediately after Mr. Ragsdell informed Ms. Lopez of his need for more frequent medical visits is entirely coincidental. Mr. Ragsdell, however, can raise genuine issues of material fact to the contrary.

Mr. Ragsdell must be "given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reason [for his treatment was] in fact a coverup for a…discriminatory decision." *McDonnell Douglas v. Green*, 411 U.S. 792, 805 (1973). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002).

The district court properly analyzed the summary judgment motion in issuing its order denying the motion. "To defeat summary judgment, the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) (internal quotation marks, citation, and alterations omitted). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . ." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1379 (10th Cir. 1994), citing *St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742, 2749 (1993) (emphasis omitted); *see also Jones v. Okla. City Pub. Sch*, 617 F.3d 1273, 1280 (10th Cir. 2010) (quotation and brackets omitted) ("No additional evidence is necessary to show discrimination because proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination.")

In searching for pretext, "[c]ourts view with skepticism subjective evaluation methods." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002). Additionally, an employer's change in justifications for its decisions supports a finding of pretext when (1) the change is made after significant legal

proceedings have occurred, or (2) the new rationale is unsupported by the evidence. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1311 (10th Cir. 2005).

As a primary matter, each of the alleged performance deficiencies cited by Defendants occurred *after*, and very quickly after, Mr. Ragsdell informed Defendant Lopez of his need for increased medical visits. Aplt. App. 674-685, 727. This temporal proximity alone raises an inference of retaliation and precludes summary judgment of each of Defendant Lopez's actions on its face. *See Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir. 1996) (stating that temporal proximity between protected conduct and adverse action creates an inference of retaliation precluding summary judgment). Next, the substance of each of those actions contradicts with Defendant Lopez's and Ms. Levy's characterizations of Mr. Ragsdell's performance as communicated to him up through mere days of when he told them of his changed medical needs. Aplt. App. 674-685, 727. Eleven days after awarding Mr. Ragsdell a hefty 10% raise, but only a few days after learning of the need for more frequent medical visits, Defendant Lopez did a "complete 180" and hauled him into a disciplinary meeting to document allegedly ongoing performance shortcomings. Both she and Ms. Levy agreed that the meeting was inconsistent with the sizeable raise awarded 11 days earlier, yet could provide no reason for the discrepancies. Aplt. App. 632, Levy. Dep. 90:19-91:17; 644-648; 674-685. Prior to the discussion concerning his medical needs, Defendant Lopez

and Mr. Ragsdell had a very good working relationship.  From February 18, 2011, Defendant Lopez's treatment of Mr. Ragsdell grew increasingly more strict, harsh, and discriminatory, worsening to the point where Mr. Ragsdell perceived her criticism to be "nonstop."  Aplt. App. 605, Ragsdell Dep. Vol. I., 142:2-25.  This reversal in position is, to say the least, weak, incoherent, and inconsistent.

Many of the directives that Defendant Lopez barked at Mr. Ragsdell were themselves contradictory.  For example, after weeks of ordering Mr. Ragsdell to work weekends, Ms. Lopez ordered him, on April 25, 2011, to complete his work between the hours of 8 a.m. and 6 p.m.  Aplt. App. 749-753.  Further weaknesses and implausibilities are found by examining that Defendant Lopez's identical behavior in the course of terminating Tracy Akers' employment.  Aplt. App. 655, 660, Akers Dep. 12:4-9, 13:12-14:3, 41:7-8; 610, Ragsdell Dep., Vol. I, 169:6-8; 499-501, Lopez Dep. 204:7-212:6.  A reasonable fact-finder could infer that Defendant Lopez's behavior with regard to her only two disabled employees was not mere coincidence, but instead was illegal discrimination.  That fact-finder could also find that Defendant Lopez revealed her true perceptions regarding Mr. Ragsdell's disability in her May 2011 Memorandum (which was after Mr. Ragsdell's departure) in which she commended herself for "never comment[ing] on his excessive bathroom breaks or Dr's appointments."  Aplt. App. 764.

Additionally, all reasons proffered by Defendants as legitimate, non-discriminatory reasons for its actions are subjective.  Those subjective evaluations must be viewed with skepticism.  *Garrett*, 305 F.3d at 1218.  Applying such skepticism, this Court has rejected exactly the maneuver that Defendants attempt here.  In *Garrett v. Hewlett-Packard Co.*, the Tenth Circuit found a triable issue of fact where the defendant-employer attempted to paint escalating subjective criticisms of the plaintiff-employee's performance as evidence of actual poor performance.  This Court observed that the "the mere fact that [plaintiff]'s evaluations bear evidence of past criticism of his work habits does not negate the possibility" that later negative evaluations were pretextual.  *Id.*  To the contrary, "[a] jury could reasonably infer that [plaintiff]'s supervisors discriminated against him by inflating and exaggerating long-standing critiques of his performance as a means of exercising [discriminatory] animus towards him."  *Id.* at 1218-19.  This Court should not be fooled by Defendants' attempt to negate pretext by citing to such remarks as, "Jason could improve on setting realistic deadlines with himself, co-workers, and clients" and is "show[ing] real progress in file management."  Aplt. App. 644-648.

Finally, some of the reasons proffered by the Defendants now are changed, post-hoc rationalizations that they did not offer either to Mr. Ragsdell while employed or anywhere in the CCRD administrative proceedings preceding this

29

litigation.  Defendants have offered at least two such rationales: that (1) the office move was an accommodation to Mr. Ragsdell, and (2) his raise was founded not only on his good performance and commitment to the agency, but also on Defendant Lopez's fear that Mr. Ragsdell would leave RHA.  These rationales were not made in the CCRD proceedings and are unsupported by the record.  Aplt. App. 784-800.  Thus, additional proof of pretext is found by the late appearance of these two, new arguments.  *See Jaramillo*, 427 F.3d at 1311.

Proof of a similarly situated party receiving more favorable treatment is also one of many methods of proving pretext under *McDonnell Douglas*.  *See Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007).  Proof by that method does not require an identical match.  *Reynolds v. Quarter Circle Ranch, Inc.*, 280 F. Supp. 2d 1235, 1243 (D. Colo. 2003) (citation and internal quotation marks omitted).  Rather,

> [s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.  A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.

*Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

Here, Mr. Ragsdell has provided proof that Defendant Lopez treated similarly situated, yet non-disabled employees in this office more favorably than

him and Tracy Akers, who was terminated shortly after she notified Ms. Lopez of her disability.  Aplt. App. 655, 660, Akers Dep. 12:4-9, 13:12-14:3, 41:7-8; 610, Ragsdell Dep., Vol. I, 169:6-8; 499-501, Lopez Dep. 204:7-212:6.  Those employees were Deputy Director Julie Levy, then Pam Moore, and Office Assistant Linda Ward, as well as Marietta Linney, all of whom reported to the same supervisor and were subject to the same performance standards (i.e., those of Defendant Lopez) as Mr. Ragsdell.  In the context of a four-person office, these employees are similarly situated and treated more favorably than Mr. Ragsdell: Defendant Lopez did not reprimand Ms. Levy for joking about disdain for filing; she freely provided the others with flexibility in their working hours; she did not deny them full participation in the FLEX benefit; and she did not ask any of them to sign her April 25, 2011 memorandum detailing allegedly "programmatic changes."   Aplt. App. 626, 635,637, Levy Dep. 57:23-61:2, 100:4-101:23, 131:6-16; 697-698, Linney Dep. 37:3-8, 38:7-41:17.

Meanwhile, Defendant Lopez treated the only other disabled employee, Tracy Akers, in exactly the same fashion as she began treating Mr. Ragsdell, with the exception that she succeeded in terminating Ms. Akers' employment.  Aplt. App. 655, 660, Akers Dep. 12:4-9, 13:12-14:3, 41:7-8; 610, Ragsdell Dep., Vol. I, 169:6-8; 499-501, Lopez Dep. 204:7-212:6.  These comparisons establish a

genuine issue of material fact as to whether Defendants' asserted reasons for their actions against Mr. Ragsdell were pretext.

Accordingly, summary judgment is not warranted given Mr. Ragsdell's ability to demonstrate a triable issue that Defendants' actions were pretextual.

> ### c. Mr. Ragsdell can establish that no rational basis existed for Defendants' discrimination, and thus his equal protection claim survives summary judgment.

Contrary to Defendants' argument, no separate element of intent is required in Mr. Ragsdell's discrimination claim brought under the 14th Amendment. The *McDonnell Douglas* framework itself is the method by which plaintiffs prove *intentional* discrimination. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1148-49 (10th Cir. 2005). A prima facie case is demonstrated through the *McDonnell Douglas* analysis, which raises an inference of intentional discrimination. Just as Mr. Ragsdell can prove that Defendants' actions were merely pretextual, so, too, can he prove that they bear no rational relationship to a legitimate governmental purpose. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Mr. Ragsdell's Equal Protection claim is founded on a number of adverse employment actions, of which increased scrutiny is only one element.

"Mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable" in the context at issue are impermissible reasons for treating the disabled differently. *Garrett*, 305 F.3d at 367 (quoting *City of Cleburne v.*

*Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985)). Cursory, unsupported references to administrative burdens are insufficient to withstand rational basis review. *Id.* "When there is an inadequate or a nonexistent connection between the classification and purpose, the Supreme Court has invalidated the classification under rational basis scrutiny." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1033 (10th Cir. 2007) (citing cases). Similarly, a defendant "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Copelin-Brown v. N.M. State Personnel Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (quoting *City of Cleburne*, 473 U.S. at 446).

As Defendants RHA and Lopez's actions here fail rational-basis review for each and all of these reasons. No business disruption ever occurred because of Mr. Ragsdell's alleged deficiencies, and no clients ever complained about Mr. Ragsdell's office being messy. In addition, Mr. Ragsdell frequently worked nights and weekends to accomplish his work tasks and ensure he had sufficient leave available if needed. Never once did he run out of leave time. Aplt. App. 480, 501-502, Lopez Dep. 102:3-18, 212:14-16, 213:9-11; 633-634, Levy Dep. 93:21-97:2.

These facts prove a "nonexistent connection" between Defendants' discrimination against Mr. Ragsdell and their asserted need to "check[] in with an employee" concerning his sick leave. *See Christian Heritage Acad.*, 483 F.3d at

1033.  Mr. Ragsdell never ran out of sick time and was frequently working long hours (and had been since at least his six-month review) to ensure he had leave remaining.  Defendant Lopez's nonstop scrutiny of his leave balances was irrational.

In light of these facts, and in light of the fact that no actual business disruptions, no client complaints, and no adverse audit findings ever occurred due to Mr. Ragsdell, Defendants cannot maintain that Defendant Lopez behaved rationally by increasing the intensity of her scrutiny of file organization.  This assertion is the type of attenuated reasoning and "cursory, unsupported references to administrative burdens" that fail rational-basis review.  *See Copelin-Brown*, 399 F.3d at 1255; *Garrett*, 305 F.3d at 367.  Plainly, the issue is rife with factual disputes.

Therefore, Mr. Ragsdell has met his burden to disprove any rational basis justifying Defendants' discrimination against him.  Thus, his Equal Protection claim cannot be summarily judged.

### 2.    Mr. Ragsdell's right to be free from discrimination on the basis of his disability is clearly established

Mr. Ragsdell has established the first step of the analysis by demonstrating that material facts preclude a finding that Ms. Lopez did not violate Mr. Ragsdell's federally protected right to be free from discrimination on the basis of his disability.  Mr. Ragsdell can likewise establish that this right is clearly established.

34

In determining whether a right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right is sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The plaintiff need not establish a "precise factual correlation between the then-existing law and the case at hand." *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir. 1992) (quoting *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir. 1990)). The Supreme Court has rejected an overly abstract approach to this issue, which would "destroy the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Instead, the Court has adopted a more particularized approach to whether a right has been "clearly established," requiring that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. Importantly, "[t]his is not to say that an official action is protected . . . unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*; *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune

from damages [or criminal] liability." (internal quotation marks omitted)); *see also Colten v. Kentucky*, 407 U.S. 104, 110 (1972).

Government officials committing outrageous, yet *sui generis*, constitutional violations ought not be permitted to shield their behavior behind qualified immunity simply because another official has not previously had the audacity to commit a similar transgression. *Fuerschbach v. Southwest Airlines Co*., 439 F.3d 1197, 1206, n.4 (10th Cir. 2006) (citing *Jones v. Hunt*, 410 F.3d 1221, 1230 (10th Cir. 2005)). Finally, when deciding an issue of qualified immunity, the court adopts the plaintiff's version of the facts. *Scott v. Harris*, 127 S. Ct. 1769, 1775 (2007).

Defendant Lopez cannot plausibly assert that disability discrimination against a subordinate employee does not violate clearly established law. The right not to be discriminated against by public officials on the basis of disability without at least some rational explanation has been clearly established for decades. *See, e.g.*, *City of Cleburne*, 473 U.S. 432. Employment discrimination of the type that Defendant Lopez engaged in is also a violation of clearly established Tenth Circuit law. It has been long established that the Equal Protection Clause of the Fourteenth Amendment prohibits discriminatory distinctions among employees by a public employer unless such distinctions can be justified as advancing a legitimate government purpose. *See, e.g.*, *Id.*

36

In *Ramirez v. Department of Corrections*, plaintiffs alleged that their supervisor discriminated against them in their employment when she, for example, "made false accusations against Plaintiffs in an effort to have them disciplined, upheld unjustified reductions in performance evaluations," and engaged in disparate treatment[2] of plaintiffs. 222 F.3d 1238, 1243-44 (10th Cir. 2000). The Tenth Circuit Court of Appeals found that such allegations not only established an equal protection violation, but also decreed that the law prohibiting discriminatory employment practices of public employers was clearly established. *Id.*; *accord Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012) (stating the employment discrimination is clearly established violation of the Equal Protection Clause); *Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003) (determining that intentional employment discrimination was clearly established in May 2000); *see also Zasada v. City of Englewood*, No. 11-cv-02834-MSK-MJW, 2013 U.S. Dist. LEXIS 45550, at *19-21 (D. Colo. Mar. 29, 2013) (deeming *Ramirez* to be clearly established law justifying denial of qualified immunity).

Furthermore, this Court has previously denied qualified immunity for state officials who treated disabled and non-disabled employees differently without a rational basis for the disparate treatment. *See Copelin-Brown*, 399 F.3d at 1255-

---

[2] The plaintiffs in *Ramirez* alleged race and national origin; however, the court did not found its analysis on the standard of scrutiny applied to race and thus the case may inform the clearly established law here.

1256.  In *Copelin-Brown*, this Court ruled that a state's refusal to give disabled employees post-termination hearings did not pass rational basis review.  *Id.*  The defendants in *Copelin-Brown* stated their purported goal for the distinction between disabled and non-disabled employees was for administrative ease and to avoid stigmatizing the disabled employees.  *Id.* This Court, relying of *City of Cleburne*, found that the defendants' purported goals were "so attenuated" and "irrational" that the disparate treatment could not "pass muster under the rational basis standard." *Id.* Additionally, it has long been established that a state official's "'desire to harm a politically unpopular group' --- [is] not [a] legitimate state interest[]" and violates the Fourteenth Amendment.  *City v. Cleburne*, 473 U.S. 447 (citing *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534, (1973).  In this case Defendant-Appellants have raised no purported goal or interest which would be advanced by treating disabled employees differently than non-disabled employees.  Indeed, there is no goal or interest served by Ms. Lopez's harassment and failure to reasonably accommodate Mr. Ragsdell, other than Ms. Lopez's own "desire to harm" Mr. Ragsdell.

Mr. Ragsdell has alleged an adequate "factual correlation" between Defendant Lopez's actions and clearly established law.  *See Patrick*, 953 F.2d at 1249.  In light of *Ramirez* and *Copelin-Brown*, the unlawfulness of Defendant Lopez's conduct from mid-February to April 27, 2011 is and was apparent.

*Anderson*, 483 U.S. at 640. *Ramirez* clearly established that making false accusations in an effort to discipline, making unjustified reductions in performance evaluations, and otherwise engaging in disparate treatment runs awry of the Equal Protection Clause of the Constitution if it does not advance a legitimate governmental objective. *Ramirez*, 222 F.3d at 1243. No reasonable official could have believed to the contrary. *Id. Copelin-Brown* clearly established that employers cannot make arbitrary or irrational distinctions between their disabled and non-disabled employees. *Copelin-Brown*, 399 F.3d at 1256. Accordingly, Defendant Lopez is not entitled to qualified immunity for her violations of Mr. Ragsdell's clearly established Fourteenth Amendment rights. Tellingly, Defendant Lopez has never claimed that she was unaware that discrimination against an employee on the basis of his disability is illegal.

### a. Whether the ADA preempts discrimination claims brought under the Fourteenth Amendment is not relevant to the discussion of qualified immunity and has not been raised until this Appeal

Defendant-Appellants' argument for qualified argument is really a preemption argument in disguise. Because Defendants failed to plead a preemption defense in their Answer, they have waived the defense and it may not be heard by this Court. In any event, the Fourteenth Amendment is not preempted by the ADA in Mr. Ragsdell's case because Mr. Ragsdell cannot avail himself of the ADA and he is not seeking relief under the ADA.

39

### i.      Defendant-Appellants Waived Their Preemption Argument and it Cannot be Heard by This Court

Defendant-Appellants failed to plead the defense of preemption in their Answer to Mr. Ragsdell's Complaint, which included thirteen different affirmative defenses. Aplt. App. 47-49.   The Federal Rules require that a responsive pleading set forth certain enumerated affirmative defenses, as well as "any other matter constituting an avoidance or affirmative defense."  Fed. R. Civ. P. 8(c).  "Failure to plead an affirmative defense results in a waiver of that defense."  *Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994).

Courts in the Tenth Circuit and elsewhere have consistently found that preemption is "an avoidance or affirmative defense" that must be pleaded in responsive pleadings.  *See DirecTV, Inc. v. Barrett*, 311 F. Supp. 2d 1143, 1147 (D. Kan. 2004); *See also Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (holding that ERISA preemption is affirmative defense); *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996) (holding that Fair Debt Collection Practices Act preemption is affirmative defense that must have been raised at the trial court level); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (holding that ERISA preemption is affirmative defense); *Jordan v. Clayton Brokerage Co. of St. Louis, Inc.*, 975 F.2d 539, 541 (8th Cir. 1992) (holding that Commodity Exchange Act preemption is affirmative defense that must have been raised at the trial court level).  While "appellate courts have

40

discretion to hear matters not raised or argued below…The general rule, however, is that the failure to raise the issue with the trial court precludes review except for the most manifest error." *Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1571-72 (10th Cir. 1993) (internal citations omitted).

Preemption was not raised in Defendants' Answer or in the summary judgment briefing. Certainly the district court did not consider it, let alone rule upon it. Accordingly, Defendant-Appellants may not "ambush" Plaintiff with an avoidance or affirmative defense that has not been properly considered by the District Court and this Court should not consider their preemption arguments on appeal. *Id.*

> ii. **The ADA does not preempt the Fourteenth Amendment because Mr. Ragsdell is not pursuing an ADA claim**

First, Mr. Ragsdell is not pursuing his Fourteenth Amendment claim on the basis of ADA protections, but directly under the Fourteenth Amendment's Equal Protection Clause, which prohibits a state official from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plainly, state officials violate the Equal Protection Clause of the Fourteenth Amendment when they "treat[] someone differently than another who is similarly situated without a rational basis for the disparate treatment." *Christian Heritage*

41

*Acad.*, 483 F.3d at 1031 (quotations omitted).  As stated above, it is clearly established that a state officials' "arbitrary or irrational" disparate treatment of disabled and non-disabled employees violates the Fourteenth Amendment. *Copelin-Brown*, 399 F.3d at 1256.  The ADA does not preempt in this case[3] because the Mr. Ragsdell is not pursuing relief under the ADA, but directly under the Fourteenth Amendment, which has been used as a vehicle to prohibit irrational or arbitrary disparate treatment between disabled and non-disabled employees before the ADA was even enacted. *See City of Cleburne*, 473 U.S. at 446.

Second, under which claim of relief Ms. Lopez is liable for her discriminatory conduct is not the inquiry in assessing qualified immunity, but rather whether the right to be free from discrimination based on a person's disability was clearly established.  Defendant-Appellants cite to *Keller v. Bd. Of Educ. Of City of Albuquerque, N.M.*, to support its proposition that Ms. Lopez could not have known that discriminating against people on the basis of their disability violates federal law.  However, this argument misses the mark.  Just as police officers do not need to know which Amendment they are violating when they use excessive force against a citizen, Ms. Lopez is not expected to know (nor can she avoid liability simply by not knowing) what particular cause of action creates liability for her unlawful behavior.  While the Tenth Circuit has not yet

---

[3] Indeed, the ADA does not even apply to the case, as RHA does not employ the requisite number of employees to be governed by the ADA.

directly determined whether a Plaintiff may bring a Fourteenth Amendment claim

congruent with an ADA and Rehabilitation Act claim, that does not change the fact

that discriminating against someone on the basis of their disability violates federal

law.[4] *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) ("The ADA

prohibits an employer from discriminating 'against a qualified individual with a

disability because of the disability.'") (Quoting 42 U.S.C. § 12112(a)). And, as

mentioned above, Mr. Ragsdell is not trying to enforce the dictates of the ADA

using the vehicle of Section 1983; rather, he is enforcing the mandate of the Equal

Protection Clause, which prohibits the government from irrationally discriminating

on the basis of disability. *See City of Cleburne*, 473 U.S. 442-46; *Copelin-Brown*,

399 F.3d at 1255-56.

Defendant-Appellants use a preemption argument to forestall any relief for

Mr. Ragsdell.  In this case Mr. Ragsdell is not "provide[d] two bites of the same

apple," *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999), because

the RHA is too small to qualify for an ADA claim.  Mr. Ragsdell is not trying a

---

[4] Although not an issue in this appeal (as Mr. Ragsdell is pursuing his claim under
the Fourteenth Amendment's Equal Protection Clause, not the ADA) this Court
should follow the reasoning in *Keller* and permit discrimination claims to be
brought under § 1983.  182 F. Supp. 2d at 1160 ("Based on this analysis, and in
light of the parallel reasoning behind the Tenth Circuit's allowance of simultaneous
Title VII and § 1983 claims based on gender discrimination, this Court finds
preemption to be inadequate grounds for dismissing Plaintiff's § 1983 equal
protection claim based upon disability discrimination."); *See also Notari v. Denver
Water Dep't*, 971 F.2d 585 (10th Cir. 1992).

new or unheard of way to keep discriminators accountable as Defendant-
Appellants suggest.  Furthermore, adopting the Defendant-Appellant's argument
would give the green-light to public employers that do not meet the size
requirement of the ADA to discriminate.

### B.    Mr. Ragsdell's CADA Claim against RHA is not Inextricably Intertwined to his Fourteenth Amendment Claim against Ms. Lopez and is not Part of this Appeal

This court lacks jurisdiction to review Mr. Ragsdell's CADA claim against
RHA.  "The denial of a summary judgment motion ordinarily is not an appealable
final order." *Bass*, 308 F.3d at 1086.  "A pendent appellate claim can be regarded
as inextricably intertwined with a properly reviewable claim on collateral appeal
only if the pendent claim is coterminous with, or subsumed in, the claim before the
court on interlocutory appeal -- that is, when the appellate resolution of the
collateral appeal necessarily resolves the pendent claim as well." *Moore v. City of
Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)

Defendant-Appellants are attempting to lump very different claims and
causes of action together, and wrongly suggest that their success on one claim
inevitably means their success on the remaining claims.  For reasons stated
throughout this brief, Mr. Ragsdell's CADA claim against RHA rightfully survived
summary judgment, is not part of this appeal, and is not inextricably intertwined
with Mr. Ragsdell's Fourteenth Amendment claim.

44

### 1.     CADA provides no qualified immunity defense

RHA cannot assert a defense of qualified immunity to Colorado's Anti-Discrimination Act – indeed it has never asserted this defense either in its Answer or throughout this litigation.  Qualified immunity is available to individuals, not to governmental entities.  *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

The only issue on appeal is whether Ms. Lopez is qualifiedly immune from Mr. Ragsdell's Fourteenth Amendment claim.  Accordingly, a dismissal of this claim against Ms. Lopez has no bearing on the outcome of the CADA claim against RHA.

### 2.     The Rehabilitation Act has different, stricter Requirements than CADA

Likewise Judge Kane's dismissal of Mr. Ragsdell's Rehabilitation Act claim has no bearing on his CADA claim.  As Judge Kane's Order stated, unlike a discrimination claim analyzed under the *McDonnell-Douglas* test, "a Rehabilitation Act claim contains a further requirement that a plaintiff must prove that he has been discriminated against *solely* because of his disability. *See* 29 U.S.C. § 794(a)(emphasis added*); Gates v. Rowland,* 39 F.3d 1439, 1445 (9th Cir. 1994)("the Act requires that the plaintiff (1) have a disability, (2) be otherwise qualified for the job, and (3) be excluded due to discrimination solely by reason of his or her disability.")." Aplt. Ann. 1027.

While the district court found that Mr. Ragsdell was not discriminated against *solely* because of his disability, it did not find that Mr. Ragsdell could not prove that he was discriminated against *because* of his disability, or that his disability played a role in RHA's treatment of him.  To prove his discrimination claim Mr. Ragsdell does not need to show that discrimination was the "sole motivating factor in the employment decision," but merely a motivating factor. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir. 1995); *Flitton v. Primary Residential Mortg., Inc.*, 238 F. App'x 410, 417 (10th Cir. 2007).  These different burdens of proof make clear that an adverse finding on the higher burden is dispositive of the result on the lower burden.  Indeed, the district court concluded as much.

Had the district court ruled that Mr. Ragsdell had not satisfied his burden under the *McDonnell-Douglas* framework and dismissed Mr. Ragsdell's CADA claim, the Rehabilitation Act claim (subject to an even higher burden of proof) would necessarily be dismissed.  However, the reverse is not necessarily true and Defendant-Appellants are inappropriately asking this court to dismiss Mr. Ragsdell's CADA claim under a heightened standard that he need not prove.  Accordingly, the CADA claim is not appealable and RHA will be held to answer to it at trial regardless of the outcome of this appeal.

## CONCLUSION

For the foregoing reasons, the district court's decision denying summary

judgment in part should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff believes oral argument would assist the Court in resolving the

issues on appeal.

DATED this 12th day of June, 2014.

Respectfully submitted,

*s/ Darold W. Killmer*
_____
Darold W. Killmer
Darren M. Jankord
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dkillmer@kln-law.com
djankord@kln-law.com

*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and 32(a)(7)(B) because this brief and contains 10,631 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman.

Dated:  June 12, 2014

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*
_____
Darold W. Killmer
Darren M. Jankord
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dkillmer@kln-law.com
djankord@kln-law.com

*Counsel for Plaintiff-Appellant*

48

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2014, I electronically filed the foregoing **BRIEF OF PLAINTIFF-APPELLEE** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

J. Andrew Nathan
Timothy R. Fiene
NATHAN, BREMER, DUMM AND MYERS, P.C.
Denver Corporate Center, III
7900 East Union Avenue, Suite 600
Denver, Colorado  80237
anathan@nbdmlaw.com
tfiene@nbdmlaw.com

*Counsel for Defendants Regional Housing Alliance of La Plata County and Jennifer Lopez*

Byeongsook Seo
GORDON & REES, LLP
555 Seventeenth St., Ste. 3400
Denver, CO 80202
bseo@gordonrees.com

*Counsel for Defendant La Plata Homes Fund, Inc.*

KILLMER, LANE & NEWMAN, LLP

*s/ Jesse Askeland*

_____
Jesse Askeland

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

    (1) all required privacy redactions have been made;

    (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Malwarebytes Anti-Malware for Windows, Version 1.75.0.1300, database version v2014.06.02.06 updated June 2, 2014, and according to the program are free of viruses.

                                      KILLMER, LANE & NEWMAN, LLP

                                      *s/ Jesse Askeland*

                                  _____

                                  Jesse Askeland